IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY, NEWARK DIVISION

ISRAEL ALBERT ALMEIDA and )
MICHAEL R. TUMMINELLI )
           )    Case No._____
    Plaintiffs, )
           )
    v. )
           )
THE HON. N. PETER CONFORTI, in his )
Official Capacity as Judge of the Superior Court of )
Sussex  County; SHAINA BRENNER, in her )
Official Capacity as Sussex County Prosecutor; )
CHIEF ERIC DANIELSON, in his Official )
Capacity as Chief of Police of Andover Township; )
THE HON. CARMEN H. ALVAREZ, in her )
Official Capacity as Judge of Superior Court of New )
Jersey, Appellate Division; and THE HON. MARIE )
P. SIMONELLI in her Official Capacity as Superior )
Court of New Jersey, Appellate Division; )
MICHAEL S. RICHARDS in his Official Capacity )
as Chief of Police Newton, New Jersey; )
ROBERT LOUGY, in his Official Capacity as )
Acting Attorney General of New Jersey; )
SUSSEX COUNTY, New Jersey; and )
JOHN DOES 1-50 )
           )
    Defendants. )
           )

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

NOW COME Plaintiffs Israel Albert Almeida ("Almeida") and Michael R. Tumminelli ("Tumminelli"), by and through undersigned counsel, and allege as follows:

1.  This action concerns the State of New Jersey's issuance of "Permit to Carry" handgun licenses pursuant to N.J. Stat. § 2C:58-4 and N.J. Admin. Code §§ 13:54-2.3, 13:54-2.4, 13:54-2.5, and 13:54-2.7 (the "Handgun Permit Laws").  Plaintiffs seek declaratory and injunctive relief, attorney's fees and costs.

2.    It is a felony to possess a handgun without a Permit to Carry issued pursuant to the Handgun Permit Laws.  N.J. Stat. § 2C:39-5(b).  A private citizen who does not hold a Permit to Carry may possess a handgun only within the confines of the "exemptions" that are set forth at N.J. Stat. § 2C:39-6(e)-(g).  These exemptions do not permit a person to carry an operable handgun, except within his or her home, real property, or place of business.

3.    It does not matter if the method of carry is open or concealed; one must first obtain a permit.

4.    In order to obtain a Permit to Carry, a private citizen must:

a.       Complete an approved training course, N.J. Stat. § 2C:58-4(c)-(d) and N.J. Admin. Code § 13:54-2.4(b)(1);
b.       Demonstrate familiarity with use-of-force laws, N.J. Admin. Code § 13:54-2.4(b)(3);
c.       Submit qualification scores that show proficiency with the handgun that the person intends to carry, N.J. Admin. Code § 13:54-2.4(b)(2);
d.       Provide fingerprints for a background check, N.J. Stat. § 2C:58-4(c);
e.       Not be disqualified from gun ownership by reason of (for example) criminal history, age, or mental health condition, N.J. Stat. §§ 2C:58-3(c), 4(c)-(d); and
f.       Show "a justifiable need to carry a handgun," N.J. Stat. § 2C:58-4(c)-(d), which is defined more particularly as "urgent necessity for self-protection, as evidenced by specific threats or previous attacks which demonstrate a special danger to the applicant's life that cannot be avoided by means other than by issuance of a permit to carry a handgun," N.J. Admin. Code § 13:54-2.4(d).

5.    N.J. Admin. Code § 13:54-2.4(d) adds the requirement, not included in the statute regarding permitting, that justifiable need means "specific threats or previous attacks which demonstrate a special danger to the *applicant's life that cannot be avoided by means other than by issuance of a permit to carry a handgun*. (emphasis added).  This additional requirement is ultra vires.

6.    N.J. Admin. Code § 13:54-2.4(f) further states:

(f) An application for a permit to carry a handgun shall be prioritized and be investigated on an expedited basis and approved or disapproved without undue delay, within 14 days if possible, under the following circumstances:

1. The applicant is a private citizen who applies for a permit to purchase a handgun and/or a firearm purchaser identification card contemporaneously with the application for a permit to carry a handgun or who has previously obtained a handgun purchase permit from the same licensing authority; and

i. Has been the victim of an act of violence that resulted in the infliction of serious or significant bodily injury, or was credibly threatened with an act of violence that if carried out would result in the infliction of serious or significant bodily injury, or subjected to an incident in which the actor was armed with and used a deadly weapon or threatened by word or gesture to use a deadly weapon as defined in N.J.S.A. 2C:11-1.c against the applicant, and there is a substantial likelihood, based on the information presented in the applicant's State of New Jersey Request for Expedited Firearms Application form (S.P. 398), and any other information revealed in the investigation of the application, that the applicant will in the foreseeable future be subjected to another such incident; …

2. An applicant who meets the criteria in (f)1 i or ii above shall be deemed to have demonstrated justifiable need (as set forth in N.J.A.C. 13:54-2.3(a)3)[.]

7. To obtain a Permit to Carry, a private citizen must apply to either their chief police officer or to the state police superintendent, depending upon the circumstances, as mandated by N.J. Stat. § 2C:58-4(c). This police official has the discretion to determine whether the requirements, including justifiable need, have been met, and to approve or disapprove the application accordingly. *See* N.J. Stat. § 2C:58-4(c).

8. After the police official has approved or disapproved the application, a private citizen must then obtain the approval of an appropriate Superior Court judge. *See In re Preis,* 118 N.J. 564, 569, 573 A.2d 148, 151 (1990) (the Handgun Permit Laws "allow[] only a Superior Court judge to issue a permit, after applicants first obtain approval from their local chief of police"). Regardless of whether the police official approves or disapproves of the application, only a Superior Court judge can actually issue a Permit to Carry. *See* N.J. Stat. § 2C:58-4(e). However, if the police official has disapproved the application, then it will proceed no further unless the applicant requests consideration from an appropriate Superior Court judge. *See id.*

9.  The Superior Court judge conducts his or her own review to determine whether the various statutory requirements, including justifiable need, have been met.  *See* N.J. Stat. §2C:58-4(d).  The Superior Court judge has discretion to deny a license application, or to limit or restrict a license. *See* N.J. Stat. § 2C:58-4(d); *see also* N.J. Admin. Code § 13:54-2.7(b).

10. A Superior Court judge deciding an application for a Permit to Carry acts as an "issuing authority" performing "functions which [a]re clearly nonjudicial in nature."  *Siccardi v. State*, 59 N.J. 545, 553, 284 A.2d 533, 538 (1971); *see also In re Preis*, 118 N.J. 564, 569, 573 A.2d 148, 151 (1990) ("the Legislature has reposed what is essentially an executive function in the judicial branch").

11. A person who has been denied a license by the Superior Court judge upon the judge's consideration of a Permit to Carry application may appeal in accordance with the law and rules governing appeals in the state courts of New Jersey.  N.J. Stat. § 2C:58-4(e).

12. The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. Amndt. II.

13. In *Drake v. Filko*, 724 F.3d 426, 431 (3d Cir. 2013), the Third Circuit assumed, but did not hold, that the "Second Amendment individual right to bear arms [applied] beyond the home."

14.  *Drake* held that "[t]o require applicants to demonstrate a 'justifiable need' is a reasonable implementation of New Jersey's substantial, indeed critical, interest in public safety." *Id*. at 438.

15. In *Siccardi v. State*, 284 A.2d 533, 540 (N.J. 1971), the Supreme Court of New Jersey stated that permits for carrying a handgun were limited to those "… who can establish an urgent necessity for carrying guns for self-protection. One whose life is in real danger, as evidenced by serious threats or earlier attacks, may perhaps qualify within the latter category but one whose

concern is with the safety of his property, protectible (sic) by other means, clearly may not so qualify."

16. The application of the Handgun Permit Laws is invalid as-applied to Plaintiffs as they have demonstrated justifiable need as will be set forth factually and specifically herein, yet Plaintiffs are unable to acquire a permit to carry a firearm due to the arbitrary and capricious nature of the permitting system and the unbridled discretion possessed by Defendants to deny Plaintiffs the ability to obtain a permit.

17. The Handgun Permit Laws as applied are in essence a de-facto ban against firearm carry as it operates as a licensing system that continues to deny Plaintiffs the right to carry a firearm for self-defense even though Plaintiffs meet the justifiable need threshold.

18. As the Third Circuit explained in *U.S. v. Barton*, 633 F.3d 168, 173 (3d Cir. 2011), even though the law may be "presumptively lawful … the Supreme Court implied that the presumption may be rebutted." (citation omitted).  The distinct facts set forth for each Plaintiff demonstrate that the Handgun Permit Laws are unconstitutional as applied to each Plaintiff and the presumptively lawful justifiable need standard is unconstitutional as applied to each Plaintiff.

19. Governor Christie issued Executive Order 180 on June 29, 2015 which created a "New Jersey Firearm Purchase and Permitting Study Commission" ("the Commission").  See Exhibit "1."

20. On December 21, 2015, the Commission issued its report, titled "Report to Governor Christopher J. Christie from New Jersey Firearm Purchase and Permitting Study Commission Established Pursuant to Executive Order 180" ("the Report").  See Exhibit "2."

21. The Report analyzed justifiable need by looking to its history and conceded that "Justifiable need is not defined in the statute or legislative history."  *Id*. at p. 13.

22. The Report bolsters the fact that justifiable need, as reflected in the Administrative Code is an incorrect interpretation of *Preis* as it stated "Although the *Preis* Court did not suggest that the standard for satisfying 'justifiable need' had been changed in any way, the New Jersey Administrative Code states that 'justifiable need' for a handgun carry permit means [t]he urgent necessity for self-protection, as evidenced by *specific* threats or previous attacks which demonstrate a special danger to the applicant's life that cannot be avoided by means other than by issuance of a permit to carry a handgun." *Id*. at 15.

23. The Commission recommended the standard be amended to "make explicit what [they] believe has always been implicit: that the requirement be that the permit should issue where the dangers to the applicant's life cannot *reasonably* be avoided other than by issuance of the permit." *Id*.

24. The Commission also reported that the justifiable need standard will eventually be struck down and cast doubt on the "suggestion in *Drake* that the Second Amendment right might be limited to the home… as the *Wheeler* court itself notes." *Id*. at p. 20.

25. The Commission further cited *Wheeler* for the proposition that an applicant need only "show an objective reason … other than a generalized concern about becoming a crime victim to anticipate an attack necessitating the defensive use of a handgun" and that the *Wheeler* standard "allows for the sort of meaningful self-protection by a law-abiding applicant that we believe will be necessary (at a minimum) for our handgun permitting laws to survive constitutional scrutiny." *Id*. at 22.

## PARTIES

26. Plaintiff Israel Albert Almeida is an adult male resident of the State of New Jersey, Township of Andover.

27. Plaintiff Michael R. Tumminelli is an adult male resident of the State of New Jersey, City of Newton.

28. Defendant the Honorable N. Peter Conforti (hereafter "Judge Conforti") is sued in his official capacity as Judge of the Superior Court of Sussex County, New Jersey, responsible for approving and issuing Permits to Carry pursuant to N.J. Stat. § 2C:58-4 and related regulations.

29. Defendant the Honorable Marie P. Simonelli ("Judge Simonelli") is sued in her official capacity as Judge of the Superior Court of New Jersey, Appellate Division, responsible for reviewing appeals for Permits to Carry pursuant to N.J. Stat. § 2C:58-4 and related regulations.

30. Defendant the Honorable Carmen H. Alvarez ("Judge Alvarez") is sued in her official capacity as Judge of the Superior Court of New Jersey, Appellate Division, responsible for reviewing appeals for Permits to Carry pursuant to N.J. Stat. § 2C:58-4 and related regulations.

31. As this Complaint relates to the conduct of the aforementioned judges, they acted and act as a licensing officer in a non-judicial capacity.

32. Defendant Shaina Brenner (hereafter "Brenner") is sued in her official capacity as the Prosecutor of Sussex County, responsible for the application of justifiable need for Plaintiff Almeida and acts so under color of law.

33. Defendant Chief Eric Danielson ("Chief Danielson") is sued in his official capacity as Chief Police Officer of Andover Township, responsible for approving applications for Permits to Carry pursuant to N.J. Stat. § 2C:58-4 and related regulations.

34. Defendant Chief Michael S. Richards ("Chief Richards") is sued in his official capacity as Chief Police Officer of Newton, New Jersey, responsible for approving applications for Permits to Carry pursuant to N.J. Stat. § 2C:58-4 and related regulations.

35. Defendant Acting Attorney General Robert Lougy is sued in his official capacity as the Acting Attorney General of the State of New Jersey, responsible for executing and administering the laws and policies at issue in this lawsuit.

36. Defendant Sussex County, New Jersey, is the County responsible for executing and administering the laws and policies at issue in this lawsuit.

37. John Doe defendants are persons unknown to Plaintiffs that are responsible for executing and administering the laws and policies at issue in this lawsuit.

## JURISDICTION AND VENUE

38. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1367, 2201, 2202 and 42 U.S.C. § 1983.

39. This Court has personal jurisdiction over each of the Defendants because, *inter alia*, they acted under color of New Jersey state law and/or within the geographic confines of the State of New Jersey.

40. Venue is proper pursuant to 28 U.S.C. § 1391.

## PLAINTIFF ISRAEL ALBERT ALMEIDA

41. Almeida was an Emergency Medical Technician in the City of Newark for 23 years. Almeida served as the lead medical tactical technician for the Newark Police SWAT team for over 15 years.

42. Almeida's responsibilities ranged from rendering medical aid not only to the general public and target subject if needed, and was part of the entry team and was made readily available for the SWAT officers if and when the need arose.

43. Almeida's continuous training involved various weapons safety training and tactics, including terrorism response and management.

44. Almeida trained with handguns, long guns, shotguns and even chemical and explosives training (certified by EMRTC in Socorro, New Mexico and Center for Domestic Preparedness in Alabama).

45. In 2010, Almeida retired from the public safety line of work and opened a firm involving Property Management services in the Newark and surrounding urban areas of New Jersey.

46. Almeida's job responsibilities include rental of property, evicting tenants for various reasons, including non-payment of rent and illegal activities.

47. Almeida also performs rent collections, mostly after-hours and in areas where the property is located, oftentimes in areas known for gang activity, drug sales and illegal weapons use.

48. Almeida is a clear target and his life is in danger while performing his job's responsibilities, including the collection of rent and eviction of tenants.

49. Almeida often carries large sums of cash, which is unavoidable, because his tenants are not able to pay rent with checks or other negotiable instruments.

50. Almeida sometimes must also confront the perpetrators of illegal activities at the managed properties because the tenants desire to live in crime free buildings.

51. In June of 2013, Almeida was forced to evict a tenant for nonpayment. This tenant was a career criminal that served prison time for aggravated assault and he was also known as a "Money, Murder, Sex" bloods gang member.

52. This subject took offense that Almeida evicted him and his family, so he threatened Almeida's life in various ways and on numerous occasions, including telling Almeida that "as long as [Almeida] in New Jersey, [Almeida] no longer safe, no matter how long it takes for him or his crew to kill [Almeida]." The subject told Almeida that he will have Almeida robbed, shot and dump his body on a dead end street to make it look like a robbery.

53. Almeida filed a terroristic threat police report which did nothing.  See Exhibit "3."  The subject then stated he would shoot the police if they came for him.

54. Around this time, Almeida was also the subject of an attempted carjacking.

55. Shortly after these incidents, Almeida applied for a New Jersey Handgun Permit with the local police and included the attached letter.  See Exhibit "4."

56. This application was denied on October 24, 2013.  See Exhibit "5."

57. Almeida appealed the denial to the Superior Court of New Jersey Law Division – Criminal Part, Sussex County, but it was denied by Judge Conforti "for the reasons stated on the record of June 18, 2014[.]" See Exhibit "6."

58. The transcript from the hearing is attached as Exhibit "7."  Judge Conforti acknowledge that "An individual certainly has a right of self-defense.  The question here is, is there a substantial threat of serious bodily harm in the carrying of a handgun is therefore is necessary to reduce the threat of unjustifiable – unjustifiable serious bodily harm."  *Id*. at p. 33.

59. Judge Conforti stated, "… if anything, the presence of a handgun can in a certain sense cause the – an increase in terms of – of bodily harm.  If individuals become aware as – and Mr. Almeida is indicating that everybody in the neighborhood knows what he's doing if they become aware that he's carrying a handgun there is the potential for an increase in violence in that context." *Id*. at p. 34.

60. Judge Conforti agreed with the prosecutor's, Defendant Brenner, suggestion that Almeida could receive rent through checks or money orders.  Unreasonably, Judge Conforti held that "these means are available to him in terms of rent collection."  *Id*.

61. Again, Judge Conforti acknowledged Almeida received a threat, but Judge Conforti stated that he "think[s] more has to be demonstrated to indicate a substantial threat exists without there having been any further contact by this person with [Almeida]." *Id*. at 36.

62. Judge Conforti then shifted the blame to the victim, Almeida, and stated "… generally speaking in electing to engage in this type of work and putting himself in – in this particular area, he's done the voluntarily (sic) of his own accord." *Id*. at 37.

63. The prosecutor, Defendant Brenner, stated that Almeida did not meet the justifiable need standard because "… there does need to be an urgent necessity for protection under the statute. Another part of that statute reads that – that such danger cannot be avoid by other means." *Id*. at 30.

64. Additionally, Brenner stated "... in this case, based on the testimony provided by Mr. Almeida, it's the State's position that this – these threats can be avoided. The manner in which the rents are collected by carrying large amounts of cash without stopping you know to deposit the money at a bank by not accepting checks or requiring tenants to pay by check or by mail, there are options in which the defendant has from other means." (sic). *Id*.

65. However, Almeida addressed Brenner's concerns regarding the acceptance of checks, when he testified that his tenants pay in cash because "[a] majority of the time it's because that's their – that's their lifestyle. That's their living condition. They do not have a bank account. They do not have a means of paying me any other way but with cash." *Id*. at 16.

66. Almeida was told that he had not met the justifiable need standard and that he had "options", which included to shut down his business; conduct his private business in a different manner; or hire a private armed security guard.

67. Almeida appealed that decision. See Exhibit "8."

68. The appellate judges, Judge Alvarez and Judge Simonelli, upheld the denial and added that "[w]e are satisfied that Almeida failed to establish a justifiable need for issuance of a permit to carry a handgun…. Almeida was never physically attacked, and except for one long-ago incident, there were no specific threats demonstrating a special danger to his life."  See Exhibit "9."

69. The application of the law to Almeida is invalid as it requires him to suffer "a substantial threat of serious bodily harm…" which could include him being murdered, before he meets the arbitrary criteria for justifiable need.

70. Since Almeida's appeal was denied, Almeida has suffered numerous other credible threats of violence against his person, including death.

71. On December 21, 2015, Almeida was the subject of an attempted armed robbery outside of a property he managed.

72. In December 2015, Almeida's life was threatened by gang members due to Almeida clearing them from a managed property.

73. On January 6, 2016, a man pointed a gun to Almeida's face and told him that that next time he will shoot Almeida in the face.

74. On or about April 22, 2016, a property Almeida manages was vandalized with graffiti and Almeida advised that if he continued to call the police on the drug dealers and putting up security systems on properties, they would come back to "take [Almeida] out shooting" and burn the building down with Almeida in it, because Almeida was costing them money.

75. On or about May 2, 2016, one of Almeida's properties had a window shot out.

76. On or about May 3, 2016, one of Almeida's properties was tagged with graffiti, including the words "snitches get stiches" and the number "252" which is a locally known gang.  It is

believed that this number is used when the gang is about to commit a shooting on its intended target.  Almeida's name was also mentioned in the graffiti.

77. Attached as Exhibit "10" is a composite exhibit containing redacted police reports[1] of recent credible threats against Almeida along with various photographs of the graffiti and the shot-out window.

78. Almeida meets all requirements to be issued a permit to carry a handgun, including justifiable need, and but for the application of the Handgun Permit Laws to Almeida, he would be issued a permit.

79. Despite already being "deemed" to have demonstrated justifiable need per N.J. Admin. Code § 13:54-2.4(f), Almeida was not issued a permit to carry.

80. All Defendants, except Chief Richards, are responsible for the application of the Handgun Permit Laws to Almeida and, but for their application of the Handgun Permit Laws, Almeida would be able to receive a permit to carry a firearm.

81. Almeida desires to lawfully carry a firearm openly or concealed.

82. The application of the Handgun Permit Laws is invalid as-applied to Almeida.

## PLAINTIFF MICHAEL R. TUMMINELLI

83. Tumminelli is currently a GS-13 employed by Department of Defense (Operations and Intelligence Program Manager to US Special Operations).

84. Tumminelli's former position requires the ability to travel with sensitive government information that supports Special Operations Task Force, as well as such departments as the Fire Department of New York City and the New York Police Department.

---

[1] Due to the sensitive nature of the police reports, certain information has been redacted.  Almeida requests that if this Court requires filing of unredacted copies, Almeida be allowed to file under seal.

85. Currently Tumminelli's position is to instruct military units on new and emerging technologies to include operational reviews and tactics, techniques and procedures involving intimate knowledge of how US Military systems function in their rightful capacities.

86. Additional duties have Tumminelli involved with key Senior Leaders for conferences, briefings and operational planning to implement at the Joint Chief of Staff levels.

87. Tumminelli serves as primary liaison and between the Intelligence Communities and the Department of Defense, maintaining extensive knowledge in the areas of emerging threats for development of strategic operations plans and future technology requirements by working closely with other Federal and Military agencies and advising on foreign responses to national terror threats both within and outside of the United States.

88. Tumminelli is currently part of a team that is responsible for the overall training of various military units throughout the US Army.

89. Tumminelli is responsible for coordinating with all levels of National and Theater Level Commands, Theater Special Operations Command (TSOCs), Special Operations Forces (SOF) component commands to remain attributed to changes in policies and missions that support National policies. Additionally, he acts to initiate actions to ensure that implementation of new special programs are integrated in the organizations. These positions require Top Secret and compartmentalized caveat clearances that allow for highly sensitive information to be retained.

90. Tumminelli is responsible for safe-keeping highly classified documents which make him a target.

91. Tumminelli is left defenseless by the application of justifiable need and due to same, national security is put at risk should Tumminelli be attacked and/or robbed while transporting highly classified materials.

92. Tumminelli frequently travels within New Jersey and outside of New Jersey.

93. Outside of New Jersey, Tumminelli can legally carry a firearm in approximately thirty-six (36) states and has met both federal and state requirements to own, possess, and carry a firearm.

94. Tumminelli's employer does not issue him a firearm as he is a civilian employee.

95. As early as October 9, 2014, established threat assessments made by the Federal Bureau of Investigations (FBI), Department of Homeland Security (DHS), Department of Defense (DOD) along with the New Jersey Intelligence Data Fusion Center (NJSPIFC) located in West Trenton, New Jersey, have amassed numerous threat assessments and intelligence reports (unclassified) that have identified ISIS and the threats posed directly to US Military and Civilian Government personnel including those persons identified as US Military and Intelligence veterans. Limited unclassified reports and bulletins identify violent acts to be committed against said personnel, due to the sensitivity of collection methods, have identified a significant threat to all personnel and family members related to external National Security protocols and employment related identities.

96. On January 31, 2016, the Washington Post issued the headline: ISIS threatens feds, military after theft of personal data.[2]

97. Quoted from the Washington Post:

> On August 11, Junaid Hussain, "a known ISIL member" who received stolen information from Ferizi, reposted an Islamic State Hacking Division tweet, according to the FBI. The tweet linked to a 30-page document with a warning to the "Crusaders:"
>
> "We are in your emails and computer systems, watching and recording your every move, we have your names and addresses, we are in your emails and social media accounts, we are extracting confidential data and passing on your personal information to the soldiers of the khilafah, who soon with the permission of Allah will strike at your necks in your own lands!"

---

[2] https://www.washingtonpost.com/news/federal-eye/wp/2016/01/31/isis-threatens-feds-military-after-theft-of-personal-data/ (last accessed June 6, 2016).

98. On October 8, 2015[3], the FBI Director, James B. Comey, gave a statement before the Senate Committee on Homeland Security and Governmental Affairs.  Director Comey stated, in part, as follows:

> … we closely analyze and assess the influence groups like ISIL have on individuals located in the United States who are inspired to commit acts of violence. Whether or not the individuals are affiliated with a foreign terrorist organization and are willing to travel abroad to fight or are inspired by the call to arms to act in their communities, they potentially pose a significant threat to the safety of the United States and U.S. persons.
>
> ***
>
> The targeting of U.S. military personnel is also evident with the release of names of individuals serving in the U.S. military by ISIL supporters. The names continue to be posted to the Internet and quickly spread through social media, depicting ISIL's capability to produce viral messaging. Threats to U.S. military and coalition forces continue today.

99. New Jersey's "Assessed Threat Level to New Jersey in 2016" lists Homegrown Violent Extremists, which are defined as "Individuals inspired by foreign terrorist organizations and radicalized in the countries in which they are born, raised or reside" as the highest threat, followed by ISIS.[4] [5]

---

[3] James B. Comey, *Testimony*, https://www.fbi.gov/news/testimony/threats-to-the-homeland (last accessed, June 6, 2016).

[4] State of New Jersey, *Assessed Threat Level to New Jersey in 2016*, http://static1.squarespace.com/static/54d79f88e4b0db3478a04405/t/569e86d740667a48116c38f4/1453229790301/Assessed+Threat+Level+to+New+Jersey+in+2016.pdf (last accessed June 6, 2016).

[5] These threats are chronicled through a variety of publicly available news reports, some of which follow: http://www.realcourage.org/2015/12/isis-in-usa-threat-usg-maryland/; http://www.mediaite.com/online/isis-hackers-post-personal-information-of-nj-transit-cops-call-for-long-wolf-attacks/; http://newyork.cbslocal.com/2015/04/17/army-picatinny-arsenal-suspicious-driver/; http://www.nj.com/morris/index.ssf/2015/04/picatinny_bomb_scare_suspect_a_czech_citizen_facin_1.html; http://www.washingtontimes.com/news/2015/aug/13/pro-isis-group-issues-threat-soon-well-behead-us-m/; http://www.dia.mil/News/SpeechesandTestimonies/ArticleView/tabid/11449/Article/653278/statement-for-the-record-worldwide-threat-assessment.aspx; http://www.rand.org/multi/homeland-security-and-defense/pubs/threat.html; http://www.cnn.com/2015/05/08/politics/force-protection-condition-level-bravo/;

100.     Tumminelli applied for a permit to carry in early April 2015.  Despite proving a justifiable need, Defendant Richards denied Tumminelli's application for a permit for "failing to demonstrate a justifiable need to carry a handgun…"  See Exhibit "11."

101. Tumminelli's Director sent Defendant Richards a memorandum to "acknowledge that [Tumminelli] is an employee…" and that "… Tumminelli's sensitive position and his daily duties require him to work with multiple U.S. Law Enforcement and U.S. Special Operations Task Forces.  Mr. Tumminelli will continue through the foreseeable future as a dedicated member to meet the U.S. National Security Mission."  See Exhibit "12."

102. It is well known that terrorists target members of the government and military while planning and carrying out their attacks.

103. Tumminelli, due to his career, maintenance of highly classified materials, National Security obligations, training, and threat assessments from various governmental bodies, reasonably fears that he is a target.

104. Tumminelli is prohibited by the application of the justifiable need standard from being granted a permit and carrying a firearm to protect his life from these threats.

105. Tumminelli meets all requirements to be issued a permit to carry a handgun, including justifiable need, and but for the application of the Handgun Permit Laws to Tumminelli, he would be issued a permit.

106. Despite already being "deemed" to have demonstrated justifiable need per N.J. Admin. Code § 13:54-2.4(f), Tumminelli was not issued a permit to carry.

107. Tumminelli desires to lawfully carry a firearm openly or concealed.

108. Defendants Lougy and Richards are responsible for the application of the Handgun Permit Laws to Tumminelli and, but for their application of the Handgun Permit Laws, Tumminelli would be able to receive a permit to carry a firearm.

## COUNT I – VIOLATION OF THE SECOND AMENDMENT

109.  Plaintiffs incorporate each and every paragraph before as if specifically set forth herein.

110.  N.J. Stat. § 2C:58-4(c)-(d), as implemented by N.J. Admin. Code § 2.4(d)(1), conditions the approval and issuance of a Permit to Carry on the existence of justifiable need, which is defined as an "urgent necessity for self-protection, as evidenced by specific threats or previous attacks which demonstrate a special danger to the applicant's life that cannot be avoided by means other than by issuance of a permit to carry a handgun."

111. Plaintiffs meet justifiable need, as currently defined in the N.J. Administrative Code, and but for the application of the Defendants of justifiable need, Plaintiffs would be granted a permit to carry.

112. The application of the justifiable need standard infringe Plaintiffs' Second and Fourteenth Amendment rights and damage Plaintiffs in violation of 42 U.S.C. § 1983.

113.  Plaintiffs' injuries are irreparable because Plaintiffs meet the justifiable need requirement and the Defendants' policies, procedures and discretion operate as a bar for Plaintiffs to exercise their right of self-defense despite the justifiable need proven by Plaintiffs.

## COUNT II – PROCEDURAL DUE PROCESS VIOLATION

114.   Plaintiffs incorporate each and every paragraph before as if specifically set forth herein.

115.   While New Jersey has the appearance of due process regarding permits to carry, in actuality, the Defendants application of justifiable need is a foregone conclusion when it comes to issuing permits to carry.  As such, appealing a denial of a permit to carry, even in light of actual

credible threats, corroborated by police reports and threats of terrorist activity issued by the United States government, is futile.

116.  Plaintiffs' injuries are irreparable because Plaintiffs meet the justifiable need standard and the Defendants' policies, procedures and discretion operate as a mere facade of due process in violation of Plaintiffs' Due Process rights.

## COUNT III – ULTRA VIRES

117.   Plaintiffs incorporate each and every paragraph before as if specifically set forth herein.

118.  N.J. Admin. Code § 13:54-2.4(d) adds a requirement, not included in the statute regarding permitting, that justifiable need means "specific threats or previous attacks which demonstrate a special danger to the *applicant's life that cannot be avoided by means other than by issuance of a permit to carry a handgun* (emphasis added).

119.  This addition, not present in the statute, is inconsistent with the plain language of the statute, N.J. Stat. § 2C:58-4, which merely requires the following: that the applicant "is not subject to any of the disabilities set forth in 2C:58-3c., that he is thoroughly familiar with the safe handling and use of handguns, and that he has a justifiable need to carry a handgun."

120.  The words "avoided by means other than by issuance of a permit to carry a handgun" provides unfathomable reasoning which suggests Plaintiffs avoid danger by  simply staying home, quitting one's job, hiring armed security guards twenty-four hours a day for around-the-clock protection, moving to another state and abandoning a chosen livelihood, or other unreasonable means.

121.  Because this provision is ultra vires, and an unreasonable and impermissible construction of the statute, Plaintiffs are injured irreparably by this ultra vires action and application of the administrative code.

## COUNT IV - ULTRA VIRES APPLICATION BY SUSSEX COUNTY

122.   Plaintiffs incorporate each and every paragraph before as if specifically set forth herein.

123.   Additionally, the county is requiring that Defendants "show a substantial threat of serious bodily harm…" before issuance of a permit, which is not required either under the administrative code or the New Jersey statutes.

124.   For this reason, the "substantial threat of serious bodily harm" requirement implemented by Sussex County is ultra vires.

125.   Because this provision is ultra vires, and an unreasonable and impermissible construction of the statute, Plaintiffs are injured irreparably by this ultra vires action and application of the administrative code.

## COUNT V – ULTRA VIRES APPLICATION BY THE COURT

126.   Plaintiffs incorporate each and every paragraph before as if specifically set forth herein.

127.   The Court, sitting an executive branch entity, is requiring that Defendants "show a substantial threat of serious bodily harm…" before issuance of a permit, which is not required either under the administrative code or the New Jersey statutes.

128.   The Court however, sitting as an executive branch entity in approving and/or denying permits, is usurping the power of the legislative branch by adding additional requirements and qualifications to the issuance of a firearm carry permit that are not in the statute nor in the administrative code.

129.   As such, the "substantial threat of serious bodily harm" requirement implemented by the court is ultra vires.

130.  Because this provision is ultra vires, and an unreasonable and impermissible construction of the statute, Plaintiffs are injured irreparably by this ultra vires action and application of the administrative code.

## COUNT VI – VIOLATION OF THE SECOND AMENDMENT TO SUSSEX COUNTY

131.  Plaintiffs incorporate each and every paragraph before as if specifically set forth herein.

132.  Sussex County impermissibly restricts the issuance of permits to carry a firearm by adding additional requirements and qualifications within the statute regulating the issuance of a permit to carry a firearm.

133.  Sussex County's application of the Handgun Permit Laws are invalid as applied against Plaintiffs in that both Plaintiffs have established a justifiable need for issuance of a permit to carry, but have been impermissibly denied permits to carry.

## COUNT VII – VIOLATION OF THE SECOND AMENDMENT – FACIAL CHALLENGE

134.  Plaintiffs incorporate each and every paragraph before as if specifically set forth herein.

135.  Plaintiffs reserve a facial challenge on whether or not justifiable need is constitutional in light of *Heller* and *McDonald* for Third Circuit Court of Appeals review en banc, and/or the United States Supreme Court.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for the following relief:

a)  declaratory judgment that N.J. Stat. § 2C:58-4(c)-(d) and N.J. Admin. Code § 13:54-2.4(d)(1) are invalid as-applied to Plaintiffs under the Second and Fourteenth Amendments because the application of justifiable need impermissibly restricts the approval of permits to carry a handgun;

b)  declaratory judgment that Plaintiffs Almeida and Tumminelli have a right to carry, either openly or concealed, a handgun of their choosing for self-defense;

c)  an injunction directing Chief Richards and Chief Danielson to approve the application for Permits to Carry of Tumminelli and Almeida for Permits to Carry;

d)  an injunction permanently restraining Defendants Chief Richards and Chief Danielson, and their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of this injunction, from enforcing the justifiable need standard so as to deny, restrict, or limit Permits to Carry or applications for same for any reason other than those reasons specifically codified in the statutes and regulations of the State of New Jersey;

e)  an injunction permanently restraining Defendants Chief Richards and Chief Danielson and Attorney General Lougy, and their officers, agents, servants, employees, and all persons in active concert or participation with them who receive notice of this injunction, from enforcing the Handgun Permit Laws so as to deny, restrict, or limit Permits to Carry or applications for same on the ground that an applicant does not have justifiable need as defined in the New Jersey administrative code which is ultra vires;

f)  an injunction permanently restraining Defendants Sussex County, Judge Conforti, Judge Simonelli, Judge Alvarez and prosecutor Brenner and their officers, agents, servants, employees, and all persons in active concert or participation with them who receive notice of this injunction, from applying the Handgun Permit Laws so as to deny, restrict, or limit Permits to Carry or applications for same on the ground that an applicant does not have justifiable need as defined in the New Jersey administrative code which is ultra vires;

g)  such other and further relief, including injunctive relief, against all Defendants, as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable;

h) attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

i) any other relief that this Court in its discretion deems just and appropriate.

This, the 13th day of June, 2016.

Respectfully submitted,

_/s/ Ryan S. Watson_____
RYAN S. WATSON

**Of Counsel:**

Ryan S. Watson
Law Offices of J. Scott Watson, P.C.
24 Regency Plaza
Glen Mills, PA  19342
(610) 358-9600
NJ Bar No. 089642013

Stephen D. Stamboulieh                    Alan Alexander Beck
Stamboulieh Law, PLLC                    Law Office of Alan Beck
P.O. Box 4008                            4780 Governor Drive
Madison, MS  39130                       San Diego, CA  92122
(601) 852-3440                           (619) 905-9105
stephen@sdslaw.us                        Alan.alexander.beck@gmail.com
MS Bar No. 102784                        *Pending Admission Pro Hac Vice
*Pending Admission Pro Hac Vice

## VERIFICATION

I, Israel Albert Almeida, declare as follows:

1.   I am a Plaintiff in the present case and a citizen of the United States of America.

2.   I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing *Verified Complaint for Declaratory and Injunctive Relief*, and if called on to testify, I would competently testify as to the matters stated herein.

3.   I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning myself, my activities and my intentions are true and correct.

Executed on June 9, 2016

ISRAEL ALBERT ALMEIDA

## **VERIFICATION**

I, Michael R. Tumminelli, declare as follows:

1. I am a Plaintiff in the present case and a citizen of the United States of America.

2. I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing *Verified Complaint for Declaratory and Injunctive Relief*, and if called on to testify, I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning myself, my activities and my intentions are true and correct.

Executed on June  9 , 2016

MICHAEL R. TUMMINELLI