UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
VICINAGE OF NEWARK

_____

ISRAEL ALBERT ALMEIDA and MICHAEL   : HON. KEVIN MCNULTY, U.S.D.J.
R. TUMMINELLI,
                                    : Civil Action No. 16-3411
             Plaintiffs,              (KM-JBC)
                                    :
        v.                          :

                                    :
THE HON. N. PETER CONFORTI, in his
Official Capacity as Judge of the   :
Superior Court of Sussex County;
SHAINA BRENNER, in her Official     :
Capacity as Sussex County
Prosecutor; CHIEF ERIC DANIELSON,   :
in his Official Capacity as Chief
of Police of Andover Township; THE  :
HON. CARMEN H. ALVAREZ, in her
Official Capacity as Judge of       :
Superior Court of New Jersey,
Appellate Division; and THE HON.    :
MARIE P. SIMONELLI in her Official
Capacity as Superior Court of New   :
Jersey, Appellate Division;
MICHAEL S. RICAHRDS in his Official :
Capacity as Chief of Police Newton,
New Jersey; ROBERT LOUGY, in his    :
Official Capacity as Acting
Attorney General of New Jersey;     :
SUSSEX COUNTY, New Jersey; and JOHN
DOES 1-50,                          :

             Defendants.            :
_____

_____

BRIEF ON BEHALF OF STATE DEFENDANTS CONFORTI, BRENNER, ALVAREZ,
  SIMONELLI, AND PORRINO (PLED AS LOUGY) IN SUPPORT OF THEIR
 MOTION TO DISMISS THE VERIFIED COMPLAINT FOR DECLARATORY AND
  INJUNCTIVE RELIEF (DOCKET ENTRY #1), AND IN OPPOSITION TO
 PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTIVE RELIEF (DOCKET
                      ENTRIES #10-11)

CHRISTOPHER S. PORRINO
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625
Attorney for State Defendants

By:  Vincent J. Rizzo
     Deputy Attorney General

     Matthew J. Lynch
     Deputy Attorney General

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . iii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL HISTORY AND STATEMENT OF FACTS . . . . . . . . . . . 3

STANDARD OF REVIEW

     A.  Motion to Dismiss Under <u>Fed. R. Civ. P.</u> 12(b)(1) . . . . 8

     B.  Motion to Dismiss Under <u>Fed. R. Civ. P.</u> 12(b)(6) . . . . 9

     C.  Motion for Preliminary Injunctive Relief . . . . . . . . 9

ARGUMENT

     POINT I

         ANY AND ALL FACIAL CHALLENGES ASSERTED IN THE
         COMPLAINT MUST BE DISMISSED . . . . . . . . . . . . . 11

     POINT II

         ALMEIDA'S CLAIMS MUST BE DISMISSED BECAUSE THEY
         ARE ALL NOW MOOT . . . . . . . . . . . . . . . . . . 11

     POINT III

         NOTWITHSTANDING THEIR MOOTNESS, ALMEIDA'S
         REMAINING CLAIMS WOULD BE PRECLUDED UNDER THE
         FULL  FAITH AND CREDIT ACT, BECAUSE HE HAD A
         FULL  AND  REASONABLE OPPORTUNITY TO LITIGATE
         THOSE CLAIMS IN HIS STATE COURT PROCEEDINGS . . . . . 13

     POINT IV

         ALTERNATIVELY, PURSUANT TO THE <u>ROOKER-FELDMAN</u>
         DOCTRINE, THIS COURT LACKS JURISDICTION OVER
         ALMEIDA'S REMAINING CLAIMS BECAUSE EFFECTIVELY
         THEY  SEEK  TO  IMPERMISSIBLY  OVERTURN  THE
         JUDGMENT  OF  THE  SUPERIOR  COURT, APPELLATE
         DIVISION . . . . . . . . . . . . . . . . . . . . . . 17

POINT V

    TUMINELLI LACKS ARTICLE III STANDING TO BRING
    HIS REMAINING CLAIMS, AND THEREFORE THEY MUST
    BE DISMISSED . . . . . . . . . . . . . . . . . . . . 19

POINT VI

    EVEN IF  TUMINELLI HAD STANDING  TO BRING HIS
    REMAINING CLAIMS, THEY ALL SHOULD BE DISMISSED
    FOR FAILURE TO PLEAD ANY CLAIM FOR WHICH RELIEF
    CAN BE GRANTED

    A. Tuminelli's As-Applied Challenge Should Be
    Dismissed Because He Has Failed to Plead Any
    Facts Showing that New Jersey's Handgun Permit
    Law Impinges on His Established Individual
    Second Amendment Rights . . . . . . . . . . . . . . 24

    B. Tuminelli's Procedural Due Process Claim
    Should Be Dismissed Because New Jersey's
    Handgun Permit Law Provides Full Appellate
    Rights in State Courts for Those Who Are
    Denied Permits . . . . . . . . . . . . . . . . . . 25

    C.  Tuminelli's Ultra Vires Claims Should Be
    Dismissed Because New Jersey State Courts Have
    Been Vested with the Inherent Judicial Power
    to Interpret and Apply the Laws of the State
    of New Jersey . . . . . . . . . . . . . . . . . . . 27

POINT VII

    THIS COURT SHOULD DENY PLAINTIFFS' MOTION FOR
    PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF
    BECAUSE NEITHER HAS DEMOSNTRATED ANY
    IRREPARABLE INJURY HE WOULD SUFFER ABSENT SUCH
    RELIEF . . . . . . . . . . . . . . . . . . . . . . 28

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . 30

# TABLE OF AUTHORITIES

## UNITED STATES CONSTITUTION

U.S. Const. art. III . . . . . . . . . . . . . . . . . . . . 20

## STATE CONSTITUTION

N.J. Const. art. VI, § 1 . . . . . . . . . . . . . . . . . . 28

N.J. Const. art. VI, § 3, ¶ 2 . . . . . . . . . . . . . . . 28

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . 9

## STATE RULES

N.J. Ct. R. 2:12-3 . . . . . . . . . . . . . . . . . . 19, 26

N.J. Ct. R. 4:30A . . . . . . . . . . . . . . . . . . . . . 14

## FEDERAL STATUTES

28 U.S.C. § 1257 . . . . . . . . . . . . . . . . . . . 19, 26

28 U.S.C. § 1738 . . . . . . . . . . . . . . . . . . . 13, 14

## STATE STATUTES

N.J.S.A. 2C:58-4(a)-(e) . . . . . . . . . . . . . . . . . . 21

N.J.S.A. 2C:58-4(c) . . . . . . . . . . . . . . . . . . . . 20

N.J.S.A. 2C:58-4(d)-(e) . . . . . . . . . . . . . . . . . . 21

N.J.S.A. 2C:58-4(e) . . . . . . . . . . . . . . . . . . . . 26

## FEDERAL CASES

Allen v. McCurry, 449 U.S. 90 (1980) . . . . . . . . . . . . 13

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) . . . . . . . . . . 9

Carpet Group Int'l v. Oriental Rug Importers Ass'n,
227 F.3d 62 (3d Cir. 2000) . . . . . . . . . . . . . . . . 8

Chrystal v. N.J. Dep't of Law & Pub. Safety,
535 Fed. Appx. 120 (3d Cir. 2013) . . . . . . . . . . . . 14

D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983) . . . 17 n.2

Diamond v. Charles, 476 U.S. 54 (1986) . . . . . . . . . . 23

District of Columbia v. Heller, 554 U.S. 570 (2008) . . . . . . 24

Drake v. Filko, 724 F.3d 426 (3d Cir. 2013),
cert. denied, Drake v. Jerejian, 134 S. Ct. 2134 (2014) . . . . 11

ECRI v. McGraw-Hill, Inc., 809 F.2d 223 (3d Cir. 1987) . . . . . 10

Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,
544 U.S. 280 (2005) . . . . . . . . . . . . . . . . . . 18

FOCUS v. Allegheny County Court of Common Pleas,
75 F.3d 834 (3d Cir. 1996) . . . . . . . . . . . . . 17, 18

Forchion v. Intensified Supervised Parole,
240 F. Supp. 2d 302 (D.N.J. 2003) . . . . . . . . . . . 19 n.3

Frank's GMC Truck Ctr. Inc. v. Gen. Motors Corp.,
847 F.2d 100 (3d Cir. 1988) . . . . . . . . . . . . . . 10

Gerardi v. Pelullo, 16 F.3d 1363 (3d Cir. 1994) . . . . . . . 10

Gould Elecs., Inc. v. United States,
220 F.3d 169 (3d Cir. 2000) . . . . . . . . . . . . . . . 8

Gulf Offshore Co., Div. of Pool Co. v. Mobil Oil Corp.,
453 U.S. 473 (1981) . . . . . . . . . . . . . . . . . . 16

Hart Steel Co. v. Railroad Supply Co., 244 U.S. 294 (1917) . . . 14

Hohe v. Casey, 868 F.2d 69 (3d Cir. 1989) . . . . . . . . . . 29

ITT Corp. v. Intelnet Int'l Corp.,
366 F.3d 205 (3d Cir. 2004) . . . . . . . . . . . . . . 18

Lanin v. Borough of Tenafly,
515 Fed. Appx. 114 (3d Cir. 2013) . . . . . . . . . . . . 30

Liner v. Jafco, Inc., 375 U.S. 301 (1964) . . . . . . . . . . 12

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) . . . . . . 20

Mathews v. Eldridge, 424 U.S. 319 (1976) . . . . . . . . . . 26

McNutt v. Gen. Motors Acceptance Corp. of Ind.,
298 U.S. 178 (1936) . . . . . . . . . . . . . . . . . . . . . . 8

Morrow v. Balaski, 719 F.3d 160 (3d Cir. 2013) . . . . . . . . 9

Mortensen v. First Fed. Sav. & Loan Ass'n,
549 F.2d 884 (3d Cir. 1977) . . . . . . . . . . . . . . . . . . 8

North Carolina v. Rice, 404 U.S. 244 (1971) . . . . . . . . . 12

Pac. Gas & Elec. Co. v. State Energy Res. Conservation
& Dev. Comm'n, 461 U.S. 190 (1983) . . . . . . . . . . . . . 22

Paramount Aviation Corp. v. Agusta,
178 F.3d 132 (3d Cir. 1999) . . . . . . . . . . . . . . . . . 14

Petro-Chem Processing, Inc. v. EPA,
866 F.2d 433 (9th Cir. 1989) . . . . . . . . . . . . . . . . . 23

Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) . . . . . 17 n.2

Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010) . . . 25

SI Handling Sys., Inc. v. Heisley,
753 F.2d 1244 (3d Cir. 1985) . . . . . . . . . . . . . . . . 10

Smolow v. Hafer, 353 F. Supp. 2d 561 (E.D. Pa. 2005) . . . . . . 8

United States v. Marcavage, 609 F.3d 264 (3d Cir. 2010) . . . . 24

United States v. One Palmetto State Armory PA-15
Machinegun Receiver/Frame, 822 F.3d 136 (3d Cir. 2016) . . . . . 25

Univ. of Tex. v. Camenisch, 451 U.S. 390 (1981) . . . . . . . 29

Valley Forge Christian Coll. v. Ams. United for
Separation of Church and State, 454 U.S. 464 (1982) . . . . . . 20

Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77 (3d Cir. 2011) . . . 9

**STATE CASES**

Gareeb v. Weinstein, 390 A.2d 706
(N.J. Sup. Ct. App. Div. 1978) . . . . . . . . . . . . . . . . 15

Gelber v. Zito P'ship, 688 A.2d 1044 (N.J. 1997) . . . . . . . 15

In re Preis, 573 A.2d 148 (N.J. 1990) . . . . . . . . . . . . 21

Joel v. Morocco, 688 A.2d 1036 (N.J. 1997) . . . . . . . . . . 15

Mystic Isle Dev. Corp. v. Perskie & Nehmad,
662 A.2d 523 (N.J. 1995) . . . . . . . . . . . . . . . . . . . 15

Siccardi v. State, 284 A.2d 533 (N.J. 1971) . . . . . . . . . 22

**OTHER AUTHORITIES**

Black's Law Dictionary (8th ed. 2004) . . . . . . . . . . . . 27

The Federalist No. 82 (Alexander Hamilton) . . . . . . . . . . 28

**PRELIMINARY STATEMENT**

Plaintiffs Israel Almeida and Michael Tumminelli, pursuant to the State of New Jersey's Handgun Permit Law, <u>N.J.S.A.</u> 2C:58-4, seek to obtain State permits to carry a handgun. But rather than pursue these applications in State court, including exhausting their available State appellate options, Plaintiffs bring a Verified Complaint for Declaratory and Injunctive Relief before this Court. Among other defendants, Plaintiffs sue the Honorable N. Peter Conforti, Sussex County Assistant Prosecutor Shaina Brenner, the Honorable Carmen H. Alvarez, the Honorable Marie P. Simonelli, and Attorney General Christopher S. Porrino (hereinafter referred to collectively as "State Defendants"), in their respective official capacities.

Other than a facial challenge to <u>N.J.S.A.</u> 26:58-4 that Plaintiffs raised but since have conceded is mooted by Third Circuit precedent, their arguments boil down to a proffer that this Court should invalidate State court appellate judgments (in the case of Almeida), or substitute itself as the authority that issues State permits pursuant to State law (in the case of Tumminelli). These arguments run contrary to numerous well-settled jurisprudential principles, and must be rejected.

First, from the outset, it is submitted that Almeida's claims are mooted by the fact that his application for a permit to carry has now been approved. If Almeida is unwilling to

1

concede that his claims (including all claims in the Verified Complaint against Defendants Brenner, Conforti, Alvarez, and Simonelli) are all now moot, they must be dismissed anyway based on res judicata or, alternatively, because this Court lacks jurisdiction under the Rooker-Feldman doctrine. He impermissibly asks this Court to vacate a State court judgment, for which, moreover, he had available appellate options.

Tumminelli, meanwhile, concedes that he did not even allow a New Jersey State court judge to grant or deny him a permit in the first place, which N.J.S.A. 2C:58-4 requires. He argues that this Court should substitute itself in to make that decision. But because he was not denied a permit, Tumminelli has no injury, let alone case or controversy, over which this Court could possibly exercise jurisdiction. Even if this, alone, did not preclude Tumminelli's claims, his asserted as-applied challenge to the State statute, and his procedural due process and ultra vires claims, are meritless and fail to state a claim for which relief may be granted.

Finally, Plaintiffs bring a Motion for Preliminary Injunctive Relief. Aside from their legal claims lacking any merit, let alone a reasonable probability of success – and the additional general mootness of Almeida's claims - Plaintiffs also have failed to demonstrate any irreparable harm that would result if their motion was not granted. Just as their claims in

the Verified Complaint must all be dismissed, their motion for preliminary injunctive relief must be denied.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS[1]

Plaintiffs Israel Almeida and Michael Tumminelli jointly filed the Verified Complaint for Declaratory and Injunctive Relief (hereinafter "Complaint") in this matter on June 13, 2016. (Docket Entry #1). In the Complaint, Plaintiffs set forth claims that New Jersey's Handgun Permit Law, N.J.S.A. 26:58-4, violates the Second Amendment of the United States Constitution both facially and as applied to them individually. Pl. Comp. at Counts I & VII. They also claim that the procedural process established by the statute violates the Due Process Clause of the Fourteenth Amendment. Pl. Comp. at Count II. Plaintiffs further set forth claims that Defendants have impermissibly and unreasonably interpreted and applied the permit to carry statute. Pl. Comp. at Counts III-V.

Plaintiffs seek declaratory relief stating that N.J.S.A. 2C:58-4(a)-(d) and N.J.A.C. 13:54-2.4(d)(1) are invalid as applied to them under the Second and Fourteenth Amendment and that they have the right to carry handguns. Pl. Comp., at Prayer for Relief (a)-(b). They seek injunctions directing their

---

[1] The Procedural History and Statement of Facts are closely intertwined and, as such, are being combined for the convenience of the Court. All facts alleged in the Verified Complaint are assumed as true for purposes of this motion only.

respective police chiefs to approve their applications for permits to carry a handgun. Pl. Comp., at Prayer for Relief (c). They also seek injunctive relief prohibiting any of the Defendants from denying permits to any applicant based on the "justifiable need" standard contained in N.J.S.A. 2C:58-4(c)-(d). Pl. Comp., at Prayer for Relief (d)-(f).

The moving State Defendants are the Honorable N. Peter Conforti, Sussex County Assistant Prosecutor Shaina Brenner, the Honorable Carmen H. Alvarez, the Honorable Marie P. Simonelli, and Attorney General Christopher S. Porrino (in place of former Acting Attorney General Robert Lougy), all named in their respective official capacities.

According to the Complaint, Almeida runs a property management services business that conducts its business in the "Newark and surrounding urban areas of New Jersey." Pl. Comp. at ¶ 45. Almeida claims that his job necessitates him personally collecting rent and evicting tenants from properties. Pl. Comp. at ¶¶ 46-47. Almeida claims that his job duties mostly take place "after-hours" and in areas "known for gang activity, drug sales and illegal weapons use" where he is a "clear target and his life is in danger." Pl. Comp. at ¶¶ 47-48. Almeida claims that he cannot avoid carrying large sums of cash while performing his job duties in these areas because "his tenants are not able to pay with checks or other negotiable

4

instruments." Pl. Comp. at ¶ 49. He alleges that there have been various incidents where he was either threatened by known gang members or where he was the victim of crime while working. Pl. Comp. at ¶¶ 51-54.

Almeida applied to Andover Township Police Chief for his New Jersey permit to carry a handgun on June 12, 2013. Pl. Comp. at Exhibit 4. The Andover Police Chief denied Almeida's application based on a lack of justifiable need on October 24, 2013. Pl. Comp. at Exhibit 5. Almeida exercised his statutory right to a hearing before the Superior Court of New Jersey, Law Division, which occurred on June 18, 2014. Pl. Comp. at Exhibit 7. Appearing on behalf of the State and objecting to the application was an assistant prosecutor, State Defendant Shaina Brenner. Pl. Comp. at ¶¶ 63-64. The Superior Court Judge, State Defendant N. Peter Conforti, subsequently issued an order denying Almeida's request for a permit to carry. Pl. Comp. at Exhibit 6.

Almeida then appealed Judge Conforti's decision to the Superior Court of New Jersey, Appellate Division. Pl. Comp. at Exhibit 8. The Appellate Division Panel Judges, consisting of State Defendants Carmen H. Alvarez and Marie P. Simonelli, entered a judgment affirming the denial of Almeida's permit, stating that "[w]e are satisfied that Almeida failed to

establish a justifiable need for issuance of a permit to carry a handgun." Pl. Comp. at Exhibit 9, page 2.

But, most notably, Almeida has since re-applied for a permit to carry, presenting new evidence in support, and this time it was granted. (See State of New Jersey Application for Permit to Carry a Handgun, attached hereto as Exhibit A). Thus, Almeida has now received exactly what he has sought in this Complaint.

Plaintiff Michael Tumminelli, according to the Complaint, works as an Operations and Intelligence Program Manager to U.S. Special Operations. Pl. Comp. at ¶ 83. Tumminelli claims that his job requires that he instruct military units on "new and emerging technologies" and serve as a "primary liaison and [sic] between the Intelligence Communities and the Department of Defense." Pl. Comp. at ¶¶ 85-87. Tumminelli claims that his job requires that he travels with "highly classified documents which make him a target." Pl. Comp. at ¶ 90. Tumminelli's employer, however, does not require that he be armed while working as is evidenced by the fact that the agency "does not issue him a firearm." Pl. Comp. at ¶ 94. Tumminelli believes that his status as a government employee makes him a target for ISIS. Pl. Comp. at ¶¶ 95-99.

Tumminelli applied to the Newton Township Police Chief for a permit to carry a handgun, but this was opposed based on his

"failing to factually demonstrate a justifiable need to carry a handgun." Pl. Comp. at Exhibit 11. Unlike Almeida, Tumminelli never sought a decision granting or denying a permit before a Superior Court Judge before filing the Complaint in this matter. In fact, Tumminelli, though he originally filed an application, expressly withdrew it before it was either granted or denied. (See August 31, 2015 Letter and September 23, 2015 Order, attached hereto as Exhibit B).

On July 1, 2016, after having filed their Complaint, Plaintiffs filed a Motion for a Preliminary Injunction. (Docket Entry #10). In the Motion, Plaintiffs seek both preliminary injunctive relief to provide them with permits to carry a handgun within the State of New Jersey, and a final judgment, presumably for all of the relief included in their Complaint.

Notably, during a July 22, 2016 telephone conference in this matter with the Hon. James B. Clark, U.S.M.J., counsel for Plaintiffs indicated that Plaintiffs were not actively pursuing any facial challenge to New Jersey's Handgun Permit Law, notwithstanding what some of their allegations and claims in the Complaint indicate.

State Defendants now file this joint Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and Opposition to Plaintiffs' Motion for a Preliminary Injunction.

## STANDARD OF REVIEW

### A. Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1)

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(1), the court must distinguish between facial and factual challenges to its subject-matter jurisdiction. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). "In a facial attack a Defendant argues that the Plaintiff did not properly plead jurisdiction[, whereas] a 'factual attack' asserts that jurisdiction is lacking on the basis of facts outside of the pleadings." Smolow v. Hafer, 353 F. Supp. 2d 561, 566 (E.D. Pa. 2005) (citing Mortensen, supra, 549 F.2d at 891).

When the court is considering a "factual" attack, it is free to weigh the evidence and satisfy itself whether it has the power to hear the case. Carpet Group Int'l v. Oriental Rug Importers Ass'n, 227 F.3d 62, 69 (3d Cir. 2000). In doing so, the court should "consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the Plaintiff." Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000) (citations omitted). For either a facial or factual attack, however, plaintiff has the burden to prove jurisdiction. McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936).

**B. Motion to Dismiss Under <u>Fed. R. Civ. P.</u> 12(b)(6)**

For a complaint to survive a motion to dismiss under <u>Fed. R. Civ. P.</u> 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content [as opposed to mere conclusions] that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 <u>S. Ct.</u> 1937, 1949-51 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 <u>U.S.</u> 544, 570 (2007)). A court may dismiss for failure to state a claim "if, accepting all well-pleaded allegations in the Complaint as true and viewing them in the light most favorable to the plaintiff, [it] finds that plaintiff's claims lack facial plausibility." <u>Warren Gen. Hosp. v. Amgen Inc.</u>, 643 <u>F.</u>3d 77, 84 (3d Cir. 2011). Although the court "must accept the allegations in the Complaint as true, '[it is] not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation.'" <u>Morrow v. Balaski</u>, 719 <u>F.</u>3d 160, 165 (3d Cir. 2013) (quoting <u>Baraka v. McGreevey</u>, 481 <u>F.</u>3d 187, 195 (3d Cir. 2007)).

**C. Motion for Preliminary Injunctive Relief**

The Third Circuit has "recognized many times that the grant of injunctive relief is an extraordinary remedy, which should be

granted only in limited circumstances." Frank's GMC Truck Ctr. Inc. v. Gen. Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988) (citation omitted). In deciding such a motion, the court must consider whether

> (1) the movant has shown a reasonable probability of success on the merits;
>
> (2) the movant would be irreparably harmed by denying relief;
>
> (3) even greater harm would result to the nonmoving party by granting relief; and
>
> (4) granting relief is in the public interest.

E.g., Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994); SI Handling Sys., Inc. v. Heisley, 753 F.2d 1244, 1254 (3d Cir. 1985). The court should grant preliminary injunctive relief only if the movant produces sufficient evidence to establish all four factors. See ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987); see also Frank's GMC Truck Ctr., supra, 847 F.2d at 102 (emphasizing that the movant must show "both a likelihood of success on the merits and the probability of irreparable harm if relief is not granted" (quoting Morton v. Beyer, 822 F.2d 364, 367 (3d Cir. 1987))).

**ARGUMENT**

**POINT I**

**ANY AND ALL FACIAL CHALLENGES ASSERTED IN THE COMPLAINT MUST BE DISMISSED.**

As stated supra, during the July 22, 2016 telephone conference with Judge Clark, counsel for Plaintiffs indicated that Plaintiffs were not actively pursuing any facial challenge to New Jersey's Handgun Permit Law.  As such, Count VII of the Complaint, and any and all other claims in the Complaint that amount to a facial challenge, should be dismissed.

In any event, Plaintiffs' facial challenge would have to be dismissed, because they have failed to state a claim for which relief can be granted by this Court. In a precedential opinion, the Third Circuit has already upheld New Jersey's handgun permit statutory regime as facially constitutional. See Drake v. Filko, 724 F.3d 426 (3d Cir. 2013), cert. denied, Drake v. Jerejian, 134 S. Ct. 2134 (2014). That binding decision precludes this Court from granting any relief to Plaintiffs as the result of a facial challenge to New Jersey's Handgun Permit Law.

**POINT II**

**ALMEIDA'S CLAIMS MUST BE DISMISSED BECAUSE THEY ARE ALL NOW MOOT.**

All of Almeida's claims must be dismissed because he has been granted a permit to carry a handgun and, therefore, all of his claims are now moot. Federal courts do not possess the power

to consider "questions that cannot affect the rights of litigants in the case before them." North Carolina v. Rice, 404 U.S. 244, 246 (1971). The inability of federal courts to review moot cases "derives from Article III of the Constitution under which the exercise of judicial power depends on the existence of a case or controversy." Liner v. Jafco, Inc., 375 U.S. 301, 306 n.3 (1964). The question on mootness is one that a "federal court must resolve before it assumes jurisdiction." Rice, supra, 404 U.S. at 246.

Here, Almeida had re-applied for his permit to carry a handgun. (See State of New Jersey Application for Permit to Carry a Handgun, attached hereto as Exhibit A). The Andover Township Police Chief approved Almeida's new application on July 25, 2016. Id. The New Jersey trial judge granted that application on August 2, 2016. Id. Thus, all of Almeida's claims are now moot and must be dismissed. Further, all State Defendants that have been named by virtue of the denial of Almeida's first application, namely Judge Conforti, Judge Alvarez, Judge Simonelli, and Assistant Prosecutor Brenner, must be dismissed from the case.

12

## POINT III

**NOTWITHSTANDING THEIR MOOTNESS, ALMEIDA'S REMAINING CLAIMS WOULD BE PRECLUDED UNDER THE FULL FAITH AND CREDIT ACT, BECAUSE HE HAD A FULL AND REASONABLE OPPORTUNITY TO LITIGATE THOSE CLAIMS IN HIS STATE COURT PROCEEDINGS.**

This Court should dismiss all of Almeida's claims even if they were not moot, because Almeida is barred from pursuing them in federal court under 28 U.S.C. § 1738. Federal courts have traditionally adhered to the related doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion). Allen v. McCurry, 449 U.S. 90, 94 (1980). In fact, Congress required all federal courts to give preclusive effect to state-court judgments when it passed the Full Faith and Credit Act. This Act mandates that the "Judicial proceedings of any court of any . . . State . . . shall have the full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State." 28 U.S.C. § 1738.

The application of res judicata by federal courts to state court judgments helps to "not only reduce unnecessary litigation and foster reliance on adjudication, but also promote the comity between state and federal courts that has been the bulwark of the federal system." Allen, supra, 449 U.S. at 95-96 (citing Younger v. Harris, 401 U.S. 37, 43-45 (1971)). Res judicata is

"not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts." Hart Steel Co. v. Railroad Supply Co., 244 U.S. 294, 299 (1917).

When considering the preclusive effect of a state court's judgment under 28 U.S.C. § 1738, federal courts should look "not to federal preclusion law or practice but to what the other jurisdiction would decide regarding its preclusive effect." Del. River Port Auth. v. FOP, Penn-Jersey Lodge 30, 290 F.3d 567, 573 (3d Cir. 2002); see Marreese v. Am. Acad. of Osteopathic Surgeons, 470 U.S. 373, 380 (1985). Thus, under the Full Faith and Credit Act, New Jersey's "entire controversy doctrine," N.J. Ct. R. 4:30A, determines whether a judgment from the Superior Court of New Jersey precludes a subsequent claim brought in federal court. See, e.g., Chrystal v. N.J. Dep't of Law & Pub. Safety, 535 Fed. Appx. 120, 123-24 (3d Cir. 2013).

The entire controversy doctrine is an "extremely robust claim preclusion device that requires adversaries to join all possible claims stemming from an event or series of events in one suit." Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 135 (3d Cir. 1999). It is "'rooted in the need to protect a defendant from a multiplicity of suits and their attendant harassment,' as well as public policy considerations against

14

piecemeal litigation in the interest of orderly administration of justice." Gareeb v. Weinstein, 390 A.2d 706, 710 (N.J. Sup. Ct. App. Div. 1978) (quoting Webster v. State Farm Mut. Auto Ins. Co. 348 A.2d 329, 331 (Del. Super. Ct. 1975)). The doctrine also applies to all "constituent claims that arise during the pendency of the first action that were known to the litigant." Mystic Isle Dev. Corp. v. Perskie & Nehmad, 662 A.2d 523, 529 (N.J. 1995).

The twin pillars of the entire controversy doctrine are "fairness to the parties and fairness to the system of judicial administration." Joel v. Morocco, 688 A.2d 1036, 1041 (N.J. 1997). When "considering the fairness to the party whose claim is sought to be barred, a court must consider whether the claimant has 'had a fair and reasonable opportunity to have fully litigated that claim in the original action.'" Gelber v. Zito P'ship, 688 A.2d 1044, 1046 (N.J. 1997) (quoting Cafferata v. Peyser, 597 A.2d 1101, 1104 (N.J. Sup. Ct. App. Div. 1991)).

Here, Almeida appealed the denial of his gun permit application to the Superior Court of New Jersey, Appellate Division. He had a fair, reasonable, and full opportunity to raise any and all applicable legal arguments before that court. Indeed, under the New Jersey entire controversy doctrine, he had an obligation to raise any and all applicable legal arguments in that litigation or else lose the ability to raise them later.

15

That Almeida now seeks a federal venue to raise or re-raise constitutional arguments is of no consequence. Absent a specific, explicit Congressional requirement, claims arising under federal law need not be adjudicated in a federal court. Gulf Offshore Co., Div. of Pool Co. v. Mobil Oil Corp., 453 U.S. 473, 478 (1981). Rather, "[s]tate courts may assume subject-matter jurisdiction over" such claims. Id. at 477. As the Supreme Court noted, "[p]ermitting state courts to entertain federal causes of action facilitates the enforcement of federal rights. If Congress does not confer jurisdiction on federal courts to hear a particular federal claim, the state courts stand ready to vindicate the federal right." Id. at 478 n.4. Indeed, the United States Constitution "requires the States to recognize federal law as paramount," and "[f]ederal law confers rights binding on state courts," "subject always to review, of course, by [the United States Supreme Court]." Id. at 478 & n.4.

Almeida asks this Court to review – and, he argues, decide differently - the very same gun permit application that he previously brought, and litigated, in a New Jersey state court. Under the Full Faith and Credit Act, this Court is now required to apply the same res judicata effect that New Jersey state courts would apply to that previous litigation and court

adjudication. Therefore, all of Almeida's claims in this matter must be dismissed.

### POINT IV

**ALTERNATIVELY, PURSUANT TO THE ROOKER-FELDMAN DOCTRINE, THIS COURT LACKS JURISDICTION OVER ALMEIDA'S REMAINING CLAIMS BECAUSE EFFECTIVELY THEY SEEK TO IMPERMISSIBLY OVERTURN THE JUDGMENT OF THE SUPERIOR COURT, APPELLATE DIVISION.**

Even if Almeida's claims in the Complaint were not moot and not clearly barred under the doctrine of res judicata, they at least would be precluded under the Rooker-Feldman doctrine.[2]

"The Rooker-Feldman doctrine deprives a federal district court of jurisdiction to review, directly or indirectly, a state court adjudication." Judge v. Canada, 208 Fed. Appx. 106, 107 (3d Cir. 2006). This doctrine also precludes the lower federal courts from evaluating "constitutional claims that are 'inextricably intertwined with the state court's [decision] in a judicial proceeding.'" FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996) (quoting Blake v. Papadakos, 953 F.2d 68, 71 (3d Cir. 1992) (alteration in original)). "State and federal claims are inextricably intertwined '(1) when in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered' [or] (2) when the

---

[2] D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923).

federal court must . . . take action that would render [the state court's] judgment ineffectual.'" ITT Corp. v. Intelnet Int'l Corp., 366 F.3d 205, 211 (3d Cir. 2004) (quoting Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 421 (3d Cir. 2003) (alterations and ellipsis in original)).

Therefore, the Rooker-Feldman doctrine "precludes a federal action if the relief requested in the federal action would effectively reverse the state decision or void its ruling." FOCUS, supra, 75 F.3d at 840 (quoting Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995)). Put another way, it precludes "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

Almeida's claims in this matter, if not precluded under the doctrine of res judicata, clearly would fall within this scope. Almeida definitively lost his case before the Superior Court of New Jersey, Appellate Division, when it issued its judgment on October 28, 2015. Pl. Comp. at Exhibit 9. Rather than exercise his available option of seeking certification up to the New Jersey Supreme Court and, ultimately, review by the United

18

States Supreme Court,[3] see, e.g., 28 U.S.C. § 1257; N.J. Ct. R. 2:12-3, Almeida instead filed this suit in this District Court, asking it to review, and reject, the state court judgment. He is, as the United States Supreme Court put it, the so-called "state-court loser" who cannot obtain jurisdiction in District Court to review and reject a state-court judgment that is complete and final.

Therefore, if this Court does not find that the doctrine of res judicata, alone, precludes Almeida's claims, it should dismiss the claims based on lack of jurisdiction.

**POINT V**

**TUMMINELLI LACKS ARTICLE III STANDING TO BRING HIS REMAINING CLAIMS, AND THEREFORE THEY MUST BE DISMISSED.**

Plaintiff Tumminelli, meanwhile, lacks even the prerequisite standing to sue in federal court because, by his own action of withdrawing his application for a permit to carry before it was either granted or denied, he lacks an actual or imminent "injury in fact" sufficient to create a case or controversy for this Court to decide.

The United States Constitution grants federal courts the judicial power only to adjudicate "cases" or "controversies."

---

[3] Compare Forchion v. Intensified Supervised Parole, 240 F. Supp. 2d 302, 306 (D.N.J. 2003), which found the Rooker-Feldman doctrine did not apply to a resentencing panel decision that the plaintiff had no available way to appeal.

U.S. Const. art. III. The federal courts have developed the doctrine of standing in order to identify the existence of either a case or controversy that can be appropriately resolved through the judicial process. See Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, 454 U.S. 464, 471-76 (1982).

An essential element to the "irreducible constitutional minimum" of standing is that a "plaintiff must have suffered an 'injury in fact' -- an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted). Tumminelli lacks any such "injury in fact" and, thus, does not possess standing to sue in federal court.

In order to obtain a permit to carry a handgun in New Jersey, an applicant must always fulfill two steps. First, an applicant must be approved by their local police chief or, in some circumstances, the Superintendent of the State Police. N.J.S.A. 2C:58-4(c). That official must then conduct an investigation within sixty days to determine whether the applicant meets the statutory requirements to receive a permit. Id. But, regardless of whether the appropriate law enforcement official finds that an applicant meets those criteria, that

applicant must then apply to a Superior Court judge, who shall always make the final determination as to the permit application. See N.J.S.A. 2C:58-4(d)-(e). The statute, in so requiring, affords no deference to the initial determination that made by the chief of police or Superintendent of State Police. See N.J.S.A. 2C:58-4(a)-(e).

As Tumminelli points out in paragraph 10 of the Complaint, this statutory regime creates a system where the Superior Court judge is the actual "issuing authority" who performs the final act of either granting or denying a permit. Also, when acting in this capacity the Superior Court judge in question is acting in an executive capacity rather than a judicial one. See In re Preis, 573 A.2d 148, 151 (N.J. 1990). Thus, a judicially cognizable injury that is ripe for judicial review exists only after the issuing Superior Court judge has denied an application for a permit to carry. And, by withdrawing his application before a permit could either be issued or denied (See August 31, 2015 Letter and September 23, 2015 Order, attached hereto as Exhibit B), Tumminelli has willingly prevented the existence of any potential, judicially cognizable "injury in fact" that would have provided him standing to pursue a claim in federal court.

To the extent the Complaint suggests that applying for permits to carry is "futile" because denial of the applications is "a foregone conclusion," Pl. Comp. at 115, that is an

21

unsupported, conclusory argument at best, and does not excuse Tumminelli's lack of standing. Much in the way that a reviewing Superior Court judge is in no way bound by the earlier findings of a police chief, there is nothing in the statutory scheme to suggest that earlier decisions by a Superior Court judge in relation to a separate application for a permit to carry could have any effect on a subsequent application. See also Siccardi v. State, 284 A.2d 533, 539-40 (N.J. 1971) (affirming a trial court judge's denial of a handgun permit renewal application, and in doing so finding no res judicata effect by the previous permit grant because, under New Jersey's statutory scheme, the judge's "determination must be made in the light of the circumstances presented to him and of sound current approaches on the issue of 'need'").

Furthermore, this case is not one where there would be "hardship to the parties [by] withholding court considerations" such that Tumminelli would suffer prejudice by "await[ing] the consummation of threatened injury," Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 200-01 (1983) (quoting Rail Reorganization Act Cases, 419 U.S. 102, 144 (1974)). Rather, the alleged "threatened injury" here would only leave Tumminelli in precisely the same position that he currently finds himself: without a New Jersey permit to carry a handgun.

Indeed, Tumminelli's own conduct – withdrawing his permit application - prevented it from being either granted or denied. As such, even if Tumminelli could be said to suffer any current injury, it is "so completely due to [his] own fault as to break the causal chain" and negate Article III standing. Petro-Chem Processing, Inc. v. EPA, 866 F.2d 433, 438 (9th Cir. 1989); see also Diamond v. Charles, 476 U.S. 54, 69-70 (1986) (finding that when a party's liability for attorney's fees was a consequence of his own decision to intervene in a case, it "cannot fairly be traced" to the law challenged, and thus cannot confer Article III standing).

As such, to the extent that Tumminelli does not currently possess a permit to carry a handgun, that fact is preeminently the consequence of his own actions in withdrawing his application before it was either granted or denied. Therefore, his claims should be dismissed for lack of standing to pursue them as required under Article III of the United States Constitution.

## POINT VI

**EVEN IF TUMMINELLI HAD STANDING TO BRING HIS REMAINING CLAIMS, THEY ALL SHOULD BE DISMISSED FOR FAILURE TO PLEAD ANY CLAIM FOR WHICH RELIEF CAN BE GRANTED.**

**A.   Tumminelli's As-Applied Challenge Should Be Dismissed Because He Has Failed to Plead Any Facts Showing that New Jersey's Handgun Permit Law Impinges on His Established Individual Second Amendment Rights.**

Unlike a facial challenge, an as-applied challenge to a law "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." United States v. Marcavage, 609 F.3d 264, 273 (3d Cir. 2010) (citing Wis. Right to Life, Inc. v. FEC, 546 U.S. 410, 411-12 (2006) (per curiam)). Here, Tumminelli has not pled any facts showing that New Jersey's Handgun Permit Law has encroached upon his established individual rights granted by the Second or Fourteenth Amendments of the United States Constitution. Nor could he ever plausibly plead any facts that would do so regardless of how many times he amends the Complaint.

Thus far, the only individual right granted by the Second Amendment that has been articulated by either the United States Supreme Court, or by the Third Circuit Court of Appeals, is a right to access a handgun within an individual's home for the purpose of self-defense. District of Columbia v. Heller, 554 U.S. 570, 635 (2008); see also United States v. One Palmetto

24

State Armory PA-15 Machinegun Receiver/Frame, 822 F.3d 136, 142 (3d Cir. 2016) (citing United States v. Marzarella, 614 F.3d 85, 91 (3d Cir. 2010)). In order to successfully state a claim for relief under an as-applied Second Amendment challenge, Tumminelli would need to plead facts that demonstrate how New Jersey's laws that regulate the ability to carry a handgun when in public could somehow impinge on his ability to use a handgun for self-defense when he is within the confines of his own home.

Tumminelli has not done so and cannot do so. The Complaint is bereft of any facts showing that his lack of a permit to carry a handgun has in any way affected his ability to possess and use a handgun for self-defense within the confines of his home. See Pl. Comp. at ¶¶ 83-108. Thus, Tumminelli's as-applied Second Amendment challenge should be dismissed because he has not pleaded factual allegations that could give rise to an entitlement for relief in this court. See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

**B.  Tumminelli's Procedural Due Process Claim Should Be Dismissed Because New Jersey's Handgun Permit Law Provides Full Appellate Rights in State Courts for Those Who Are Denied Permits.**

Tumminelli's claim under the Due Process Clause of the Fourteenth Amendment should be dismissed because denials of permits to carry are subject to the full judicial appellate process of the State of New Jersey. Procedural due process

imposes constraints on State governmental decisions that deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fourteenth Amendment. Mathews v. Eldridge, 424 U.S. 319, 332 (1976). The fundamental requirement of due process is "the opportunity to be heard at a meaningful time and in a meaningful manner." Id. at 333 (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).

Here, Tumminelli was capable of exercising the full post-deprivation procedural rights of any civil plaintiff or appellant within the State of New Jersey. First, any applicant who has been denied a permit to carry in New Jersey possesses the right to an immediate appeal "in accordance with law and the rules governing the courts of this State." N.J.S.A. 2C:58-4(e). If unhappy with a decision by the Appellate Division of the Superior Court, an applicant may then file a petition for certification to the New Jersey Supreme Court. N.J. Ct. R. 2:12-3. Finally, if a petition for certification is denied, or the Supreme Court of New Jersey renders an unfavorable decision, an applicant would then be capable of filing a petition for a writ of certiorari with the United States Supreme Court to seek review to the extent that the New Jersey state courts' decisions rely on applications of federal law. See 28 U.S.C. § 1257.

Indeed, outside of the criminal context where a defendant would have opportunities to seek both post-conviction and habeas

26

relief, it is difficult to even imagine a more expansive set of rights to legal process that could possibly be available to an individual. In short, Tumminelli, and any other applicant, enjoys the full panoply of procedural process rights available to any civil plaintiff or appellant in the State of New Jersey. Therefore, the claim for a violation of the Due Process Clause of the Fourteenth Amendment should be dismissed.

**C. Tumminelli's <u>Ultra Vires</u> Claims Should Be Dismissed Because New Jersey State Courts Have Been Vested with the Inherent Judicial Power to Interpret and Apply the Laws of the State of New Jersey.**

Tumminelli's <u>ultra vires</u> claims must be dismissed because the courts of the State of New Jersey possess the judicial power granted by the sovereign State to interpret the State's own laws and regulations. The inherent power of State courts to interpret the laws of the very State in which they sit is so deeply and inextricably woven into the very fabric of Anglo-American jurisprudence to the point of being almost axiomatic. Yet, Tumminelli somehow is attempting to claim that the courts of New Jersey cannot interpret the meaning of the State's own statutes and regulations. <u>See</u> <u>Pl.</u> <u>Comp.</u> at Counts III & V; <u>see also</u> <u>Black's Law Dictionary</u> (8th ed. 2004) (defining "ultra vires" as "[u]nauthorized; beyond the scope of power allowed or granted by . . . law"). Such claims, however, are patently absurd and should not be humored by this Court.

The New Jersey State Constitution grants the judicial power of the State to "a Supreme Court, a Superior Court, and other courts of limited jurisdiction." N.J. Const. art. VI, § 1. It vests the Superior Courts with expansive "general jurisdiction throughout the State in all causes." Id., § 3, ¶ 2. And the judicial power possessed by the courts of the many States has long been understood to include the power to interpret and apply the laws of the State that created a particular court and, indeed, predates the existence of the United States of America itself. See The Federalist No. 82 (Alexander Hamilton) ("[T]he states will retain all pre-existing authorities, which may not be exclusively delegated to the federal head. . . [a]nd under this impression I shall lay it down as a rule that the state courts will retain the jurisdiction they now have").

### POINT VII

**THE COURT SHOULD DENY PLAINTIFFS' MOTION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF BECAUSE NEITHER HAS DEMONSTRATED ANY IRREPARABLE INJURY HE WOULD SUFFER ABSENT SUCH RELIEF.**

The Court should also deny Plaintiffs' Motion for a Preliminary Injunction, Docket Entries #10-11, because they are not likely to succeed on the merits and they will not suffer irreparable harm absent a preliminary injunction. To obtain a preliminary injunction, Plaintiffs must show "both a likelihood of success on the merits and the probability of irreparable harm

if relief is not granted." Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989). Here, Plaintiffs are not likely to succeed on the merits when, in fact, they are not likely to even withstand a motion to dismiss. See supra Points I-VI.

In addition to showing a likelihood of success on the merits, Plaintiffs bear the burden of a "clear showing of immediate irreparable injury." Hohe, supra, 868 F.2d at 72 (quoting ECRI, supra, 809 F.2d at 226). Establishing the mere "risk of irreparable harm is not enough." Id. The purpose of a "preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981).

Here, the result that Plaintiffs seek would serve precisely the opposite purpose that preliminary injunctions are supposed to serve. See id. Rather than preserving the status quo, or enjoining an action that would somehow adversely affect Plaintiffs, they seek an injunction requiring Defendants to take affirmative acts that would alter the "relative positions of the parties." Id. Further, the fact that Plaintiffs delayed seeking a preliminary injunction from this Court for either several months, in the case of Tumminelli, or almost an entire year, in the case of Almeida, tends to show that they would not suffer irreparable harm but for the entry of a preliminary injunction.

See Lanin v. Borough of Tenafly, 515 Fed. Appx. 114, 118 (3d Cir. 2013).

Finally, Almeida's claim for preliminary injunctive relief is additionally mooted by the fact that he has been granted a permit to carry. See supra Point II.

For these reasons, Plaintiff's Motion for a Preliminary Injunction should be denied. To the extent it could also be construed as seeking a Permanent Injunction, it likewise should be denied for these reasons, as well as for all the reasons, see supra Points I-VI, that the Complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, State Defendants' Motion to Dismiss should be granted, and Plaintiffs' Motion for Preliminary Injunctive Relief should be denied.

Respectfully submitted,

CHRISTOPHER S. PORRINO
ATTORNEY GENERAL OF NEW JERSEY

By: _____
Vincent J. Rizzo, Jr.
Deputy Attorney General

By: _____
Matthew J. Lynch
Deputy Attorney General