## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ISRAEL ALMEIDA and MICHAEL TUMMINELLI,** | Civ. No. 16-3411 (KM) (JBC) |
| **Plaintiffs,** | **OPINION** |
| **v.** | |
| **THE HON. N. PETER CONFORTI, in his Official Capacity as Judge of the Superior Court of Sussex County; SHAINA BRENNER, in her Official Capacity as Sussex County Prosecutor; CHIEF ERIC DANIELSON, in his Official Capacity as Chief of Police of Andover Township; THE HON. CARMEN H. ALVAREZ, in her Official Capacity as Judge of Superior Court of New Jersey, Appellate Division; and THE HON. MARIE P. SIMONELLI in her Official Capacity as Superior Court of New Jersey, Appellate Division; MICHAEL S. RICHARDS in his Official Capacity as Chief of Police Newton, New Jersey; ROBERT LOUGY, in his Official Capacity as Acting Attorney General of New Jersey; SUSSEX COUNTY, New Jersey; and JOHN DOES 1-50,** | |
| **Defendants.** | |

**KEVIN MCNULTY, U.S.D.J.:**

Israel Albert Almeida ("Almeida") and Michael R. Tumminelli ("Tumminelli") each submitted an application for a permit to carry a handgun. On June 13, 2016, Plaintiffs filed a verified complaint in this Court seeking declaratory and injunctive relief, alleging that the denials of their permit

1

applications violated their Second Amendment and Due Process rights. (ECF no. 1, cited as "Compl.")[1] Named as defendants are Sussex County[2] and certain local police chiefs, county officials, and state judges in their official capacities.

Now before the Court are motions to dismiss the Complaint for lack of jurisdiction and failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), as well as a motion for a preliminary injunction. Key to the resolution of these motions are two facts: first, that Almeida's permit was granted upon reapplication, and second, that Tumminelli abandoned his application at the state-court stage. I dismiss the claims for lack of subject matter jurisdiction, because Almeida asserts a claim that is moot, while Tumminelli lacks standing and asserts a claim that is not ripe for decision on constitutional and prudential grounds.

## I.     BACKGROUND

### A. Procedures and Standards for Issuing Permits to Carry Handguns

This case concerns Plaintiffs' applications to obtain a permit to carry a handgun ("carry permit") pursuant to N.J. Stat. Ann. § 2C:58-4.[3] A valid carry

---

[1]     Record items cited repeatedly will be abbreviated as follows:

"Def. Mot." = Brief on behalf of State Defendants Conforti, Brenner, Alvarez, Simonelli, and Porrino (Pled as Lougy) in Support of their Motion to Dismiss the Verified Complaint for Declaratory and Injunctive Relief, and in Opposition to Plaintiffs' Motion for Preliminary Injunctive Relief (ECF no. 34)

"Pl. Opp." = Plaintiffs' Combined Brief in Response to Defendants' Motion to Dismiss and Reply to Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction (ECF no. 41)

[2]     The Clerk entered default against Sussex County on August 23, 2016.

[3]     The carry permit is distinct from a permit to purchase a handgun or obtain a firearms purchaser identification card ("FPIC"). "No person of good character and good repute in the community in which he lives, and who is not subject to any of the disabilities set forth in this section or other sections of this chapter, shall be denied a permit to purchase a handgun or a firearms purchaser identification card, except as hereinafter set forth." N.J. Stat. Ann. § 2C:58-3(c). A police chief or superintendent is empowered to issue a purchase permit or FPIC. N.J. Stat. Ann. § 2C:58-3(d). The

permit authorizes its legal holder to carry a handgun throughout New Jersey, subject to statutory exceptions. *Id.* § 2C:58-4(a). The carry permit expires no more than two years after its issuance, at which time the permit holder may apply for a renewal. *Id.*

Section 2C:58-4(b)–(e) prescribes the procedures and standards governing application for, and issuance of, carry permits. *Id.* Generally, New Jersey residents must first submit any application for a carry permit or a renewal thereof to the local police chief.[4] *See id.* The police chief must then conduct a background investigation of the applicant and gather information on the handgun(s) the applicant intends to carry. *Id.* The police chief will approve the application only if (1) the applicant is not subject to any statutory disability that precludes issuance of a handgun purchase permit; (2) the applicant is "thoroughly familiar with the safe handling and use of handguns"; and (3) the applicant "has a *justifiable need* to carry a handgun." *Id.* (emphasis added)

The Superior Court, however, is the actual issuing authority; the police chief's approval or disapproval is a required but merely preliminary step. *See* § 2C:58-4(d)–(e). If the police chief approves the application, "the applicant shall forthwith present it to the Superior Court of the county in which the applicant resides." *Id.* § 2C:58-4(d).[5] The Superior Court will then issue the permit "if, but only if, it is satisfied that the applicant is a person of good character" and meets the same three criteria that the police chief was required to consider. *See*

---

requirements for a carry permit, as set forth in text, are more stringent, and the police chief's approval is merely preliminary to the Superior Court's decision to issue or deny a carry permit.

[4]    An applicant who (1) is employed by an armored car company, (2) does not reside in New Jersey, or (3) resides in a New Jersey municipality lacking a police chief must instead submit the application to the New Jersey State Police superintendent. N.J. Stat. Ann. § 2C:58-4.

[5]    I note that the corresponding regulations do not clearly require the *applicant* to present the application to the Superior Court: "If the application is approved, by the chief of police . . . it shall be forwarded to the Superior Court of the county where the applicant resides." N.J. Admin. Code § 13:54-2.5.

*id.* If the police chief disapproves the application, the applicant "may request a hearing in the Superior Court . . . by filing a written request for such a hearing within 30 days of the denial." *Id.* § 2C:58-4(e). In either case, there is no required fee unless and until a permit is issued. *See id.* § 2C:58-4(d)–(e).

The Superior Court is an independent decision maker. Irrespective of the police chief's approval or disapproval, the Court has complete discretion to deny or grant the application and issue the permit (with or without restrictions). *See id.; see also In re Dubinsky*, No. A-4443-13T3, 2016 WL 805998, at *2 (N.J. Super. Ct. App. Div. Mar. 2, 2016) (rejecting argument that Superior Court erred by failing to afford deference to police chief's approval of carry permit application) (citing *In re Pantano*, 429 N.J. Super. 478, 485, 60 A.3d 507, 511 (App. Div. 2013)).

### B. Almeida's Carry Permit Applications

According to the Complaint, Israel Almeida first applied to the then-Chief of Police for Andover Township, Achille Taglialatela, for a New Jersey Handgun Permit on June 12, 2013. Chief Taglialatela disapproved Almeida's application on October 24, 2013, citing a lack of justifiable need. (Compl. ¶ 56) Almeida then appealed the denial to the Superior Court of New Jersey, Law Division, Criminal Part, Sussex County.

On June 18, 2014, defendant Judge Conforti held a hearing at which defendant Assistant Prosecutor Shaina Brenner represented the State, and Evan F. Nappen, Esq., represented Almeida. On July 30, 2014, Judge Conforti issued an order denying Almeida's request for a carry permit. Almeida then appealed the order to the Appellate Division, where defendants Judge Carmen Alvarez and Judge Marie Simonelli affirmed the denial on October 28, 2015. *In re Almeida*, No. A-5505-13T1, 2015 WL 6473282, at *1 (N.J. Super. Ct. App. Div. Oct. 28, 2015).

Thereafter, Almeida allegedly "suffered numerous other credible threats of violence against his person, including death [threats]." (Compl. ¶ 70) The parties agree that sometime in mid-2016, subsequent to the events described

in the Complaint, Almeida reapplied for a carry permit. (*See* Def. Mot. 6; *id.* Ex. A) Andover Township Police Chief Eric Danielson approved Almeida's new application on July 25, 2016, and Judge Conforti, without requiring a hearing, granted Almeida a carry permit on August 2, 2016. (Def. Mot. Ex. A; Pl. Opp. 1, 8 n.2)

### C. Tumminelli's Carry Permit Application

According to the Complaint, Michael Tumminelli applied for a carry permit in April 2015. (Compl. ¶ 100) On May 7, 2015, the Newton Chief of Police, defendant Michael S. Richards, denied Tumminelli's application for a carry permit, citing a failure to demonstrate a justifiable need. (*Id.*; *id.* Ex. 11) The May 7, 2015 denial letter informs Tumminelli that he may, within 30 days, request a hearing in the Superior Court pursuant to N.J. Admin. Code § 13:54-2.8. (*Id.* Ex. 11) Ultimately, "Tumminelli was not issued a permit to carry." (Compl. ¶ 106)

Tumminelli concedes, however, that there is a little more to the story. Tumminelli initially requested a Superior Court hearing, but he then withdrew his appeal on August 31, 2015, before the Superior Court determined whether to issue or deny him a permit. In a letter to Judge Conforti, Tumminelli wrote: "As of 31 August 2015 I regret to inform the Sussex County Superior Court that I am withdrawing my appeal of Denial of New Jersey Permit to Carry a Handgun. I will not seek further efforts in this matter effective immediately." (Def. Mot. Ex. B) On September 23, 2015, Judge Conforti dismissed Tumminelli's appeal without prejudice in light of Tumminelli's withdrawal letter. (*Id.*) Tumminelli now concedes that he withdrew his appeal to the Superior Court. (Pl. Opp. 2)

### D. The Present Litigation

On June 13, 2016, Plaintiffs filed a seven-count Complaint seeking declaratory and injunctive relief for alleged violations of their Second Amendment and Due Process rights arising from the denial of their carry permit applications. Plaintiffs allege that Defendants violated their Second

Amendment rights by denying them carry permits (1) because the statutory "justifiable need" standard is impermissibly restrictive[6] (Count VII); (2) because Sussex County's requirement that a carry permit applicant show a "substantial threat of serious bodily harm"[7] is impermissibly restrictive (Count VI); and (3) because Plaintiffs in fact meet the definition of "justifiable need" as defined in N.J. Admin. Code § 13:54-2.4(d)(1)[8] (Count I). Relatedly, Plaintiffs assert that they were injured by "ultra vires" interpretations of "justifiable need" as set forth in N.J. Admin. Code § 13:54-2.4(d)(1) and as applied by Sussex County and the Superior Court (Counts III, IV, and V). Finally, Plaintiffs contend that Defendants violated their Due Process rights by operating the carry permit application and issuance system so that permits will not issue even to applicants demonstrating a justifiable need (Count II).[9]

---

[6]     Plaintiffs acknowledge that the Third Circuit's decision in *Drake v. Filko*, 724 F.3d 426 (3d Cir. 2013) (holding that the "justifiable need" standard is constitutional), *cert. denied*, *Drake v. Jerejian*, 134 S. Ct. 2134 (2014), precludes this argument. However, Plaintiffs seek to preserve a facial challenge for appellate review, including en banc appellate review. (Pl. Opp. 5; *see also* Compl. ¶ 135)

[7]     At Almeida's hearing, Judge Conforti stated that "The question here is, is there a substantial threat of serious bodily harm [and] the carrying of a handgun is therefore . . . necessary to reduce the threat of . . . unjustifiable serious bodily harm." (Compl. Ex. 7 at 33:16–20)

[8]     "Justifiable need" is "[t]he urgent necessity for self-protection, as evidenced by specific threats or previous attacks which demonstrate a special danger to the applicant's life that cannot be avoided by means other than by issuance of a permit to carry a handgun." N.J. Admin. Code § 13:54-2.4(d)(1).

[9]     Although Count II is titled "Procedural Due Processes Violation," Plaintiffs' brief clarifies that Plaintiffs actually intended to assert a claim for a *substantive* due process violation. Relying heavily on a case with a lengthy discussion of substantive due process, *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 792 (2d Cir. 2007), Plaintiffs explain:

> Defendants misconstrue Plaintiff's Due Process argument. Mr. Tumminelli does not contend that New Jersey does not have enough procedure within its court system to appeal an erroneous denial of a firearm carry permit. Rather, Mr. Tumminelli argues that Defendants handgun carry policies violate Due Process because its handgun carry policies are ultra vires.

(Pl. Opp. 15–19) Thus, the counts related to Defendants' alleged ultra vires interpretations of "justifiable need" and their violation of Plaintiffs' due process rights

On July 7, 2016, Plaintiffs filed a motion for a preliminary injunction. (ECF no. 10) On August 18, 2016, defendant Michael S. Richards filed an omnibus motion to dismiss the complaint for failure to state a claim against him pursuant to Fed. R. Civ. P. 12(b)(6), and also filed a brief in opposition to Plaintiffs' preliminary injunction motion. (ECF no. 27) The following day, on August 19, 2016, defendants Judge Carmen H. Alvarez, Shaina Brenner, Judge N. Peter Conforti, State Attorney General Christopher S. Porrino,[10] and Judge Marie P. Simonelli filed a motion to dismiss the action under Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, and also opposed the motion for a preliminary injunction. (ECF no. 34) The plaintiffs' motion for a preliminary injunction and the defendants' two motions to dismiss are now before the Court.

## II.   LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(1)

The Court's subject matter jurisdiction is considered pursuant to Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) challenges may be either facial or factual attacks. *See* 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed.*

---

turn out to be claims for Second Amendment violations based on a substantive due process argument:

> The government has the right to put in place laws regarding the issuance of handgun permit assuming that procedure complies with the Second Amendment. Now that those laws are in place Defendants are bound to follow those laws. Defendants are acting outside of the scope of the laws promulgated by the New Jersey legislature and this violates Due Process. Mr. Tumminelli has a protected liberty interest in his firearm permit because the Second Amendment right applies outside the home. Defendants' conduct is ultra vires. The government can have no interest in acting outside of the scope of its own law, and as such, Defendants['] conduct violates Plaintiffs' Due Process rights.

(Pl. Opp. 19)

[10]   The Complaint was actually filed against Porrino's predecessor in office, Robert Lougy. Because the action is brought against this defendant in his official capacity, Porrino's substitution is automatic. *See* Fed. R. Civ. P. 25(d).

*Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa v. Ford Motor Co.,* 67 F. Supp. 2d 424, 438 (D.N.J. 1999). A court considering a facial challenge assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.,* 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa,* 67 F. Supp. 2d at 438.

A factual challenge, however, attacks subject matter jurisdiction by challenging the truth (or completeness) of the jurisdictional allegations set forth in the complaint. *Mortensen,* 549 F.2d at 891. The factual nature of the attack permits the Court to consider evidence extrinsic to the pleadings. *Gould Elecs. Inc. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000), *holding modified on other grounds by Simon v. United States,* 341 F.3d 193 (3d Cir. 2003). Thus a factual jurisdictional challenge may not go forward unless and until the plaintiff's allegations have been controverted. *Mortensen,* 549 F.2d at 891 n. 17.

> [I]n reviewing a factual attack, "the court must permit the plaintiff to respond with rebuttal evidence in support of jurisdiction, and the court then decides the jurisdictional issue by weighing the evidence. If there is a dispute of a material fact, the court must conduct a plenary hearing on the contested issues prior to determining jurisdiction."

*Lincoln Ben. Life Co. v. AEI Life, LLC,* 800 F.3d 99, 105 (3d Cir. 2015) (quoting *McCann v. Newman Irrevocable Trust,* 458 F.3d 281, 290 (3d Cir. 2006) (citations omitted)).

Here, Defendants' jurisdictional arguments are treated as factual attacks because they assert that the Complaint's allegations impacting subject matter jurisdiction are incomplete and rely on materials extrinsic to the Complaint. (Def. Mot. Ex. A; *id* Ex. B) Although the Third Circuit has "repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits," *Davis v. Wells Fargo,*

824 F.3d 333, 348 (3d Cir. 2016), there is no risk of that transformation here because the jurisdictional challenge does not "attack[] facts at the core of the merits." *See id.* Instead, Defendants assert extrinsic facts that supplement, rather than contradict, the facts alleged in the Complaint. Indeed, the Plaintiffs concede the relevant supplementary facts. At the heart of the dispute is Defendants' legal conclusion that those facts preclude this Court's exercise of subject matter jurisdiction.

### B. Fed. R. Civ. P. 12(b)(6) and Motion for Preliminary Injunction

Because I ultimately agree with Defendants that this Court lacks subject matter jurisdiction, I do not reach the issues of the sufficiency of the pleadings or the merits of Plaintiffs' motion for a preliminary injunction.

## III.   DISCUSSION

Almeida and Tumminelli do not assert claims for damages. Critically, they do not facially challenge New Jersey's requirement of a carry permit; while preserving the issue, they acknowledge that Third Circuit precedent forecloses such a challenge. *See Drake v. Filko*, 724 F.3d 426 (3d Cir. 2013) (holding that the "justifiable need" standard is constitutional), *cert. denied sub nom. Drake v. Jerejian*, 134 S. Ct. 2134 (2014); Pl. Opp. 5; Compl. ¶ 135) Rather, they seek injunctive and declaratory relief with respect to the denial, or claimed denial, of their own applications for carry permits. As to these claims, the Court lacks subject matter jurisdiction: Almeida asserts a claim that is moot, while Tumminelli lacks standing and asserts a claim that is not ripe for decision.

### A. Lack of Jurisdiction over Almeida's Claims: Mootness

Defendants contend that Almeida's claims for declaratory and injunctive relief are moot because, on August 2, 2016 (less than two months after this action's commencement), Judge Conforti granted Almeida's resubmitted application for a permit to carry. Consequently, say Defendants, this Court lacks jurisdiction over Almeida's claims. (Def. Br. 11)

It is axiomatic that Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies," requiring "an actual controversy . . . be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona,* 520 U.S. 43, 67, 117 S. Ct. 1055 (1997). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk,* ___ U.S. ___, 133 S. Ct. 1523, 1528 (2013) (quoting *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477–78, 110 S. Ct. 1249 (1990)). In order for a claim to be moot, however, it must be "impossible for a court to grant any effectual relief." *Knox v. Serv. Employees,* 567 U.S. 298, 132 S. Ct. 2277, 2287, 183 L. Ed. 2d 281 (2012); *see also Blanciak v. Allegheny Ludlum Corp.,* 77 F.3d 690, 698–699 (3d Cir. 1996) ("If developments occur during the course of adjudication that . . . prevent a court from being able to grant the requested relief, the case must be dismissed as moot."). Where a party maintains "a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin v. Chafin,* ___ U.S. ___, 133 S. Ct. 1017, 1023 (2013).

Almeida first argues that his claims are not moot because his case "turns on whether his constitutional rights were violated in the past."[11] (Pl. Opp. 5) But a plaintiff cannot avoid mootness merely by alleging that Defendants wronged him. Rather, the proper inquiry is whether it is possible any longer for "a court to grant any effectual relief" for those alleged wrongs. *See Serv. Employees,* 132 S. Ct. at 2287; *Blanciak,* 77 F.3d at 698–699. I find it impossible to grant Almeida any of the relief he requests in this case.

---

[11]     *See also* Pl. Opp. 1 ("While the preliminary injunction for Almeida is most likely mooted since he received his permit, Almeida has separate and distinct injury for violation of his due process rights and standing to continue as a Plaintiff in this case.")

Almeida requests both injunctive and declaratory relief.[12] (Compl., Prayer for Relief, at 21–23) In particular, he seeks an injunction "directing . . . Chief Danielson to approve [his] application" for a permit to carry and injunctions permanently restraining Defendants from applying the "justifiable need" standard as defined in the New Jersey Administrative Code to deny or limit carry permit applications.[13] (*Id.* at 22) Almeida also seeks declaratory judgments that (1) the New Jersey statutes and regulations restricting the approval of permits to carry a handgun are unconstitutional as applied to him, and (2) that he has a right to carry "a handgun of [his] choosing for self-defense." (*Id.* at 21–22) These requested remedies are useless now that Almeida has his permit.

First, this Court cannot fashion any effective injunctive relief because Chief Danielson has already approved Almeida's handgun permit application. In other words, no injunction can provide to Almeida any meaningful relief because he has already obtained the permit he desired. Second, "in the context of an action for declaratory relief, a plaintiff must be seeking more than a retrospective opinion that he was wrongly harmed by the defendant." *Mollett v. Leicth,* 511 F. App'x 172, 174 (3d Cir. 2013) (quoting *Jordan v. Sosa,* 654 F.3d 1012, 1025 (10th Cir. 2011)). This is "because [the purpose of] a declaratory judgment is to declare the rights of litigants" going forward. *Sherard v. Berks Cty.,* 576 F. App'x 66, 69–70 (3d Cir. 2014) (quoting *CMR D.N. Corp. & Marina*

---

[12]    Plaintiffs also request attorney's fees and costs pursuant to 42 U.S.C. § 1988, but an "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim . . . [and] reasonable caution is needed to be sure that mooted litigation is not pressed forward, and unnecessary judicial pronouncements on even constitutional issues obtained, solely in order to obtain reimbursement of sunk costs." *Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 480, 110 S. Ct. 1249, 1255 (1990).

[13]    The remaining injunctive relief sought pertains to Plaintiffs' facial challenge to N.J. Stat. Ann. § 2C:58-4. However, Plaintiffs have conceded that their facial challenge is precluded by *Drake v. Filko,* 724 F.3d 426, 440 (3d Cir. 2013) (upholding constitutionality of New Jersey Handgun Permit Law's requirement that an applicant for a public-carry permit must demonstrate a "justifiable need").

*Towers Ltd. v. City of Phila.,* 703 F.3d 612, 628 (3d Cir. 2013)). "[I]t is 'by definition prospective in nature.' It does not serve a purpose where the complained-of situation has changed." *Id.* Here, Almeida's "situation has changed"—he has been granted a permit. Thus, a declaratory judgment that the earlier denial was unconstitutional or that Almeida is currently entitled to a carry permit would serve no meaningful purpose.

Almeida makes a second argument, apparently invoking a venerable but narrow exception to this rule for conditions "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S. Ct. 279, 55 L. Ed. 310 (1911). That exception has two prerequisites: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable likelihood that the same complaining party would be subjected to the same action again." *Abdul–Akbar v. Watson,* 4 F.3d 195, 206 (3d Cir. 1993) (quoting *Weinstein v. Bradford,* 423 U.S. 147, 96 S. Ct. 347, 46 L. Ed. 2d 350 (1975); *see also City of Los Angeles v. Lyons,* 461 U.S. 95, 109, 103 S. Ct. 1660, 1669 (1983) (citizen subjected to police chokehold lacks standing to assert claim for injunctive and declaratory relief, absent evidence that he will again be subjected to the practice); *Ghana v. N.J. State Parole Bd.,* 2011 WL 3608633 at *5 (D.N.J. Aug. 15, 2011) (Simandle, C.J.).

Here, Almeida argues that there is no "guarantee that the Defendants will apply the correct standard in less than two years when Almeida must renew his permit to carry." (Pl. Opp. 7) This contention does not satisfy the requirement that Almeida demonstrate a "reasonable likelihood" that he will improperly be denied a permit in the future; lack of a "guarantee" that an event will *not* occur hardly amounts to a reasonable likelihood that the event *will* occur. Speculation that two years hence Defendants may improperly decline to renew Almeida's permit is insufficient to overcome the mootness doctrine.

Accordingly, I must grant Defendants' motion to dismiss for lack of jurisdiction as to Almeida's claims. Thus, Judge Conforti, Judge Alvarez, Judge

Simonelli, and Assistant Prosecutor Brenner, who have been named as defendants only by virtue of the denial of Almeida's first carry permit application, are dismissed from the case. Because I have already dismissed Almeida's claims based on mootness, I do not reach Defendants' arguments that several additional doctrines, including res judicata and the *Rooker-Feldman* doctrine, preclude Almeida's claims.

### B. Tumminelli's Claims: Article III Standing, Constitutional and Prudential Ripeness

Defendants argue that Tumminelli lacks standing to sue because he has not suffered an injury-in-fact and, relatedly, that the alleged wrongful denial of a carry permit cannot be ripe for review unless and until "the issuing Superior Court judge has denied [Tumminelli's] application for a permit to carry." Further, say Defendants, Tumminelli's lack of a carry permit is not fairly traceable to Defendants' actions but rather to his own withdrawal of his application. (Def. Mot. 19–23)

A plaintiff must establish his standing to sue under Article III of the United States Constitution, which limits the jurisdiction of federal courts to "Cases" and "Controversies." This "constitutional standing" has three essential elements, of which the first two are: (1) "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent', not 'conjectural' or 'hypothetical'"; and (2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court.'" *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561, 112 S. Ct. 2130 (1992) (internal citations omitted). At the pleading stage, general factual allegations will suffice to discharge the plaintiff's burden. *Id.* at 561.

Ripeness is a related "justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling

themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08, 123 S. Ct. 2026, 2030 (2003) (quoting *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–149, 87 S. Ct. 1507 (1967)). Where, as here, state administrative actions are involved, ripeness doctrine also serves to protect federalism principles. *See Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 247, 73 S. Ct. 236, 242, (1952) ("Anticipatory judgment by a federal court to frustrate action by a state agency is even less tolerable to our federalism.").

"Under the ripeness doctrine, federal courts 'will not decide a case where the claim involves contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995) (quoting *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580–81, 105 S. Ct. 3325, 3333 (1985)). This doctrine derives "both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Id.* at 880. When the plaintiff, as here, seeks prospective relief, "the constitutional component of the ripeness inquiry" may "coincide[] squarely with standing's injury in fact prong." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000).[14]

### 1.    **Injury-in-Fact and Constitutional Ripeness**

Tumminelli has not satisfied the standing requirement of injury-in-fact. Although he alleges that he was injured by the wrongful denial of a carry permit, extrinsic evidence demonstrates that the State's permit-issuing

---

[14]    *See also N.Y. Shipping Ass'n, Inc. v. Waterfront Comm'n of N.Y. Harbor*, 460 F. App'x 187, 189 n.2 (3d Cir. 2012) ("[T]he constitutional requirement for ripeness is injury in fact.") (citing *Duke Power Co. v. Carolina Envtl. Study Grp.*, 438 U.S. 59, 81, 98 S. Ct. 2620 (1978)); *Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2006) ("[I]n cases involving pre-enforcement review, the standing and ripeness inquiries may tend to converge . . . because claims for pre-enforcement review involve the possibility of wholly prospective future injury, not a prayer for relief from damages already sustained.").

authority—the Superior Court—never denied him a permit. In fact, Tumminelli now concedes that he withdrew his application before the Superior Court could rule on it. (Pl. Opp. 2; *see also* Def. Mot. Ex. B) Thus, he never got to the point in the administrative process at which he could be denied (or granted) a permit.

Tumminelli counters that he nevertheless has alleged an injury-in-fact because his application was disapproved "by Chief Richards who acts as the gatekeeper for the permitting process." (Pl. Opp. 2) This formulation appears to recast the injury alleged in the Complaint. The Complaint alleges that "[d]espite already being 'deemed' to have demonstrated justifiable need . . . , Tumminelli was not *issued* a permit to carry," in violation of his Second Amendment rights. (Compl. ¶ 106) (emphasis added) In the Complaint, then, the alleged injury is not the preliminary disapproval of the application by a police official; it is the non-*issuance* of the permit by the body which possesses issuing authority. The injury claimed in the Complaint is simply absent from the facts.

I do consider the revised version of Tumminelli's injury as articulated in his brief. No facts are set forth, however, to establish that Chief Richards's denial of approval inflicted a sufficiently concrete injury-in-fact upon Tumminelli's Second Amendment rights. Neither the brief nor the Complaint itself adequately articulates the legal or practical effect of a police chief's disapproval upon the Superior Court's independent decision to issue or deny a permit. *If* the police chief's disapproval were shown (or at least plausibly alleged) to make the Court's approval of the application less likely, that might constitute a risk of harm sufficient to satisfy the concreteness requirement. *See generally Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (citing *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013)).[15] On that charitable assumption, I take the analysis one step further.

---

[15]   The Complaint does state that, "if the police official has disapproved the application, then it will proceed no further unless the applicant requests consideration from an appropriate Superior Court judge." (Compl. ¶ 8) What the Complaint leaves out, however, is that if the police official has *approved* the application, it will likewise proceed no further without Superior Court involvement. Because the applicant may

### 2.  Prudential Ripeness

Even if the police chief's disapproval gave rise to a constitutional injury-in-fact, I would still be required to consider the prudential component of the ripeness doctrine. A court considering the prudential ripeness doctrine in the context of an administrative decision examines: (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." *N.Y. Shipping Ass'n, Inc. v. Waterfront Comm'n of N.Y. Harbor,* 460 F. App'x 187, 189 (3d Cir. 2012) (quoting *Ohio Forestry Ass'n, Inc. v. Sierra Club,* 523 U.S. 726, 730, 733, 118 S. Ct. 1665 (1998)). Applying those prudential factors, I find Tumminelli's claims nonjusticiable.

### a.  Fitness for Judicial Review

The New Jersey legislature has assigned the administration of carry permit laws and regulations to police officials and Superior Court judges, who sit in an administrative, not judicial, capacity.[16] As to this process, then, the prudential ripeness inquiry is the same as it would be in relation to an ordinary agency decision. "Whether a question is fit for judicial review depends upon

---

request consideration by the Superior Court judge at no cost, and the Superior Court judge considers the application *de novo,* the difference between police chief approval or disapproval is most likely negligible.

Tumminelli's argument is not frivolous, however. Although no injury-in-fact is properly pled, it is possible to construct an argument that a police official's wrongful denial of approval could injure plaintiff by making court approval less likely. A person denied approval by the police chief may be "aggrieved," and the procedure for requesting a Superior Court hearing is within a section titled "Appeals from denial of applications." N.J. Stat. Ann. § 2C:58-4(e). Nevertheless, the lack of evidence of any legal disadvantage flowing from a police chief's disapproval, and the *de minimis* inconvenience of requesting a court hearing (court involvement being required in either case), casts doubt on the proposition that the police chief's disapproval causes a concrete injury-in-fact.

[16]    In its capacity as the "issuing authority," the Superior Court performs "functions which [a]re clearly nonjudicial in nature." *Siccardi v. State,* 59 N.J. 545, 553, 284 A.2d 533, 538 (1971); *see also In re Preis,* 118 N.J. 564, 569, 573 A.2d 148, 151 (1990) ("the Legislature has reposed what is essentially an executive function in the judicial branch").

factors such as whether the agency action is final; whether the issue presented for decision is one of law which requires no additional factual development; and whether further administrative action is needed to clarify the agency's position, for example, when the challenged prescription is discretionary so that it is unclear if, when or how the agency will employ it." *Nextel Commc'ns of Mid-Atl., Inc. v. City of Margate*, 305 F.3d 188, 193 (3d Cir. 2002) (quoting *Felmeister v. Office of Attorney Ethics,* 856 F.2d 529, 535–36 (3d Cir. 1988)).

The issues Tumminelli presents are not fit for judicial review.

First, the administrative action at issue here was not a final determination. Only the Superior Court has the authority to issue carry permits. As a matter of law, Chief Richards's denial of approval was not a final determination. Tumminelli had the right to request a hearing in the Superior Court; indeed, even with police chief approval, he *had* to go to Superior Court to obtain a permit. Tumminelli initially applied to the Superior Court, but then withdrew his application before the Court could make a determination. This "absence of administrative finality" alone is enough to establish that a "dispute is not yet sufficiently fit for judicial review." *See Kushi v. Romberger,* 543 F. App'x 197, 201 (3d Cir. 2013) (case for declaratory and injunctive relief was unripe where plaintiff's initial application for an amended birth certificate was denied without prejudice and plaintiff reapplied but then withdrew application when additional information was requested) (citing *Univ. of Med. and Dentistry of N.J. v. Corrigan,* 347 F.3d 57, 69 (3d Cir. 2003)).[17]

---

[17]    Fifth Amendment takings cases are also instructive. I am cognizant that the ripeness inquiry has been further refined in that specialized context, *see Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172, 105 S. Ct. 3108 (1985), and that those cases should therefore be applied here with great care. It is suggestive, however, that in several of them, a plaintiff's withdrawal of an application in advance of a final administrative decision precluded a finding of ripeness. *See, e.g., Zilber v. Town of Moraga,* 692 F. Supp. 1195, 1199 (N.D. Cal. 1988) (applying precedent holding that, "since the [plaintiffs] had withdrawn their application prior to a final decision, the application was not meaningful, the case was not ripe, and the futility exception did not apply"); *Sartori v. United States,* 67 Fed. Cl. 263, 269, 2005 WL 1983751 (2005) (discussing ripeness doctrine and takings cases, including one where "plaintiff applied for a permit, [but] withdrew the application

Similarly, to the extent that Tumminelli alleges that Chief Richards's disapproval increased the likelihood that the Superior Court would deny him a carry permit, such a claim is not yet ripe. It remains contingent on the Superior Court's future decision. *See Doe v. Virginia Dep't of State Police*, 713 F.3d 745, 758–59 (4th Cir. 2013) ("Where an injury is contingent upon a decision to be made by a third party that has not yet acted, it is not ripe as the subject of decision in a federal court.") (citing *Franks v. Ross,* 313 F.3d 184, 195 (4th Cir. 2002) (where county's and state agency's "interwoven" participation in a permitting process was "properly viewed as two parts of a single process," controversy was not ripe until the completion of the final step of the process)).

Second, it is of course conceded that the Complaint presents to this Court many legal issues—such as whether Defendants correctly interpreted the statutory "justifiable need" standard. But those legal issues are preceded by factual issues best decided by the Superior Court. These include a question as to what level of danger Tumminelli faces, as well as the mixed question of law and fact as to whether Tumminelli's need for self-protection meets the "justifiable need" standard as defined in N.J. Admin. Code § 13:54-2.4(d)(1).

Third, as another district court in this Circuit has observed, the ripeness requirement contains "the 'usually unspoken element' of the preservation of judicial resources." *Comite de Apoyo A Los Trabajadores Agricolas v. Perez,* 46 F. Supp. 3d 550, 563 (E.D. Pa. 2014). To put it another way, "Article III courts should not make decisions unless they have to." *Id.* (citing *Nat'l Treasury Emp. Union v. United States,* 101 F.3d 1423, 1431 (D.C. Cir. 1996)). By withdrawing his application, Tumminelli destroyed the possibility that the Superior Court might grant his application and resolve the issue without expenditure of federal judicial resources. It would run contrary to good judicial administration to

---

before the agency had a chance to make a final decision regarding it" and the court held that plaintiff's taking claims were not ripe because "there was no final decision by the Corps regarding the land—only 'preliminary decisionmaking'").

permit Tumminelli to force the issue by simply refusing to pursue the usual procedures for obtaining a permit. He is not only crying before he is hurt; he has needlessly summoned a federal ambulance.

Finally, Tumminelli is not so much asking this Court to review a state administrative decision as asking it to usurp the Superior Court's role. He is in effect rewriting the procedure to say that an applicant, after receiving the police chief's decision, may then go to either federal or state court, at his option. He is inviting a system whereby either participant in an ongoing state administrative process may quit when it senses that its opponent is ahead on points, and go to federal court. That is not this Court's proper role in our federal system. Federal declaratory judgments and injunctions have their place, but they are not intended to supplant State administrative schemes in routine cases, particularly where the challenged rulings are preliminary or tentative. *See Pub. Serv. Comm'n of Utah, supra.*

For all of these reasons, Tumminelli's claims do not satisfy the ripeness requirement of being fit for judicial review.

### b.    Hardship to the Parties

This Court's finding that Tumminelli's claims are not ripe will not cause him significant hardship. "'[T]o be sufficient to overcome prudential interests in deferral,'" a party's "'hardship must be both immediate and significant.'" *Nextel,* 305 F.3d at 194 (quoting *Felmeister,* 856 F.2d at 537). The hardship to Tumminelli—his continued lack of a carry permit—involves no immediate change in his current circumstances. Further, the hardship Tumminelli will incur by this Court's dismissal without prejudice of his claims is not significant; Tumminelli, like his co-plaintiff, Almeida, can easily reapply for a carry permit. Further, I note that Tumminelli withdrew his carry permit application on August 31, 2015, but did not file suit until June 13, 2016, nearly ten months later. The claim of urgency therefore rings hollow.

Any hardship that Tumminelli may sustain does not outweigh the factors working in favor of deferral of this case until it is sufficiently ripe for adjudication.

### c.     Futility Exception

Tumminelli argues that waiting for a Superior Court decision would have been futile. The Third Circuit has "recognized futility as an exception to . . . ripeness." *Chassen v. Fid. Nat'l Fin., Inc.*, 836 F.3d 291, 296 (3d Cir. 2016) (citing *Sammon v. N. J. Bd. of Med. Examiners*, 66 F.3d 639, 641 (3d Cir. 1995) (engaging in a "futile gesture to establish ripeness" would be unnecessary)). Tumminelli contends that denial was a foregone conclusion, citing the supposedly paltry number of permits New Jersey issues each year. (Pl. Opp. 12) I do not find that argument persuasive. This Court will not presume, without evidence, that the State courts are not proceeding in good faith to process such applications. Without more information about the total number of applications and the reasons for rejections, Tumminelli's futility argument remains speculative. Indeed, the only concrete information before the Court is that Almeida, Tumminelli's co-plaintiff, was granted a carry permit upon reapplication. This suggests that the permit application process is not a futile endeavor.

### 3.     Causation

There is another obvious deficiency in Tumminelli's claim of standing: he fails to establish that the alleged violation of his Second Amendment rights is "fairly traceable" to Defendants' conduct. Whether or not Chief Richards preliminarily approved the application, Tumminelli could have obtained a carry permit only if the Superior Court was independently satisfied that he met the eligibility criteria.

Assume, for example, that the Chief was mistaken, and that Tumminelli met all of the carry permit qualifications. It was Tumminelli's own conduct—the

20

withdrawal of his application prior to a Superior Court determination—that ensured he could not be issued a permit. Even if I assume, without evidence, that Chief Richards's disapproval increased the *likelihood* of Tumminelli's being denied a permit, it was Tumminelli's withdrawal of his application that made denial a *certainty*. Therefore, Tumminelli's alleged injury cannot be said to be "fairly traceable" to Chief Richards's objection to his application. Tumminelli has not merely "contributed to his own injury"; rather, "the injury is so completely due to [his] own fault as to break the causal chain." *See* C. Wright, & A. Miller, Federal Practice and Procedure: Jurisdiction § 3531.5 (3d ed.); *see also Parvati Corp. v. City of Oak Forest, Ill.*, 630 F.3d 512 (7th Cir. 2010) (injury did not suffice to supply standing where it was not fairly traceable to defendants' conduct because the injury was "brought on by" plaintiff's prior "litigation decisions").

Tumminelli seems to imply that the Superior Court did in fact deny his application on the merits, noting that Judge Conforti's "Order styles the dismissal as an 'Order Denying Applicant a Permit to Carry.'" (Pl. Opp. 2, 12) The order's title does not trump its substance. The order clearly explains that Judge Conforti dismissed Tumminelli's appeal without prejudice, at Tumminelli's request. For this independent reason, then—Tumminelli's withdrawal of his application—he lacks standing to complain.

## IV.   CONCLUSION

For the foregoing reasons, the Complaint is DISMISSED WITHOUT PREJUDICE as to all Defendants for lack of subject matter jurisdiction, and Plaintiffs' motion for a preliminary injunction is DENIED as moot.

An appropriate Order follows.

Dated: February 14, 2017

HON. KEVIN MCNULTY, U.S.D.J.

21